Olgarita JACKSON and Wilford L. Jackson, Plaintiffs,

v.

MAZDA MOTOR OF AMERICA, INC., Defendant.

Civ. A. No. AW 93–2737.

United States District Court, D. Maryland, Southern Division.

Jan. 13, 1995.

---

Thomas A. Appel, Sykesville, MD, for plaintiffs.

John F. Anderson, McGuire, Woods, Battle & Boothe, Alexandria, VA, for defendant.

## MEMORANDUM OPINION

WILLIAMS, District Judge.

The Jacksons instituted this products liability suit against Mazda Motor of America, Inc. ("MMA") alleging personal injury resulting from a one car accident in the District of Columbia. The Jacksons' complaint sets forth claims for relief based on strict liability in tort, negligence, failure to warn and breach of implied warranty. After conducting discovery, MMA moved for summary judgment, the matter currently pending before the Court. The issues have been fully briefed. No hearing is deemed necessary. Local Rule 105(6) (D.Md.1994). The Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

## FACTUAL BACKGROUND

On September 21, 1990, Ms. Jackson had a one car accident with her 1987 Mazda RX–7 ("RX–7"). According to Ms. Jackson, after receiving her car from a parking attendant, she placed her foot on the brake and put the car in gear. Ms. Jackson alleges that her car immediately accelerated, while her foot was on the brake, causing her to hit a utility pole on the opposite of the street.[1]

On September 20, 1993, the Jacksons instituted suit in this Court. They maintain that MMA defectively designed the RX–7 in three regards. First, they argue that MMA intentionally equipped the RX–7 with an Accelerated Warming–Up System ("AWS") designed to increase engine speed to 3,000 revolutions per minute ("RPM") on a cold start. This, they maintain, makes the RX–7 unreasonably dangerous and defective. Second, the Jacksons urge that MMA's failure to equip the RX–7 with a gear lock mechanism is a design defect. Third, the Jacksons reason that MMA's design of the interior driver's compartment increased the likelihood of targeting error whereby the driver accidently depresses the accelerator instead of the brakes.

The Jacksons also argue that the RX–7 contains a manufacturing defect because it has an improper ground between the emission control unit and the air flow meter which causes it to surge during acceleration to more than 2,500 RPM. The Jacksons further allege that the RX–7 is subject to

---

1. Ms. Jackson also alleges that she experienced a similar incident of unexplained acceleration in 1988. However, the Court will limit its discus- sion to the 1990 incident as the statute of limitation bars the 1988 incident.

"sneaks" in electrical circuitry, causing the vehicle to accelerate at an unintended speed. They maintain that MMA failed to warn them of these alleged defects.

By these allegations the Jacksons seek to hold MMA strictly liable for Ms. Jackson's resulting personal injury. They also seek damages for negligence, breach of implied warranty and loss of consortium. MMA maintains that it is not responsible for Ms. Jackson's alleged personal injury because the RX–7 is not defective in any way.

The parties conducted discovery, during which the Jacksons' expert witnesses testified about the alleged defects. The Jacksons hired two expert witnesses: Michael D. Leshner and Erik Carlsson. Mr. Leshner, who did not test the car's AWS, testified that if the engine was running when Ms. Jackson entered the vehicle, the AWS would be the unlikely cause of the accident. Even though he never tested the car for grounding problems, he also testified that he had no explanation for how a grounding problem would have caused the unintended acceleration. He explained that if the engine had been running, the vehicle would have been operating at about 1000 RPMs as opposed to 2500 or 3000 RPMs. Mr. Leshner elaborated that he did test the vehicle for mechanical defaults. He found no mechanical default evidence or any evidence that the operator controls, accelerator pedal, brake pedal, brakes, throttle linkage, or the throttle body contributed to the unintended acceleration.

The Jacksons engaged Mr. Carlsson to address MMA's targeting error defense. Mr. Carlsson testified that he had no opinion as to what precipitated the unintended acceleration. He explained that the AWS could not have been the cause. He also testified that even if the RX–7 had a grounding problem, it would not cause high engine speed and, thus, could not have resulted in the acceleration. As to "sneaks" in the electrical system, Mr. Carlsson explained that this theory is only applicable to cars equipped with cruise control. However, Ms. Jackson testified that her car does not have cruise control.

Mr. Carlsson also testified that the car's interior design was unlikely to have contributed to the cause of the accident. He elaborated that "you really get into your behavior as to why would a few people have a problem and not everybody." Mr. Carlsson continued to testify that he believed that everything in the RX–7 worked in the manner in which MMA intended. He elaborated that he saw nothing about the design that would make it easy to mistake the brake pedal for the gas. Therefore, he concluded that "the only possible explanation I can give in this case is that she may indeed have been one of these that Wolfgang Reinhart conclude may have stepped on the gas instead of the brake, what he refers to as misapplication of the gas pedal." He based this conclusion on Ms. Jackson's account that there was a high rate of speed in this incident and in the 1988 incident.

Mr. Leshner explained that targeting error on Ms. Jackson's part was a possible cause of the accident. He explained that if targeting error was the cause, a gear lock mechanism would have prevented the accident. He stated that a gear lock mechanism is "designed to assure that the vehicle is at rest when it's being shifted from one gear position to another, and it's designed to prevent the possibility of the driver misapplying the controls", thereby preventing any unintended acceleration. Specifically, a gear lock mechanism, according to Mr. Leshner, minimizes the chances for unintended acceleration by preventing the transmission controls from being shifted out of park by the driver without the driver depressing the brakes, or having her foot on the brake. Therefore, he surmised that the only defect in Ms. Jackson's car was that it did not have a gear lock mechanism. MMA, based on the experts' testimony and Ms. Jackson's unequivocal statement that she had her foot on the brake, now moves for summary judgment.

## DISCUSSION

### Summary Judgment

■ Summary judgment is proper when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the burden of demonstrating the absence of any factual issues.

In considering a motion for summary judgment, the Court must construe all facts and reasonable inferences drawn therefrom in the non-movant's favor. However, the mere existence of a scintilla of evidence will not defeat a motion for summary judgment. *Matsushita Electric Industrial Co., LTD v. Zenith Radio Corporation,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The opposing party must provide the Court with specific facts establishing a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

The Jacksons contend that several facts are disputable and establish a genuine issue for trial. They argue that the location of Ms. Jackson's foot and whether Mr. Leshner testified that he could not find a defect which would explain the unintended acceleration are contested factual issues. They also argue that the alleged defects named in their complaint are contested factual issues.

Here, Ms. Jackson unequivocally testified that her foot was on the brake. Perhaps, the Jacksons now argue that the location of her foot is a contested factual issue because, according to their experts, the only likely cause of the accident was targeting error.[2] The experts concluded that the only defect in the RX–7 was that it lacked a gear lock mechanism. Since Ms. Jackson testified that her foot was on the brake, in this case a gear lock mechanism would not, as Ms. Jackson conceded, have prevented the accident.

By the experts' and Ms. Jackson's testimony, summary judgment is appropriate. The evidence simply does not support the Jacksons' theories of how the accident happened. Neither Leshner nor Carlsson found anything wrong with the RX–7 absent the gear lock mechanism. Indeed, Carlsson testified that he believed everything in the RX–7 worked the way in which MMA intended.

The Court need not consider the various standards that the Jacksons were required to meet under their theories of how the accident happened. "Rather, [the Court] can proper-

ly resolve this case by holding that the evidence [the Jacksons] *did* proffer was insufficient as a matter of law." *Hull v. Eaton Corporation,* 825 F.2d 448, 455 (D.C.Cir. 1987) (emphasis in original) (citation omitted).

### CONCLUSION

The Jacksons instituted this personal injury suit against MMA alleging various theories of how Ms. Jackson's accident happened. Despite their numerous claims that the MMA defectively manufactured and designed the RX–7, the Jacksons have not pointed to any genuine issues of material fact. Moreover, "the record as a whole could not lead a rational trier of fact to find for the [Jacksons]". *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. at 1356. Accordingly the Court will grant MMA's motion for summary judgment. It will be so ordered.

---

2.   Expert testimony is required when the subject presented is 'so distinctly related to some science, profession, business or occupation as to be beyond the ken of the average laymen.' *See Hull v. Eaton Corporation,* 825 F.2d 448, 455 (D.C.Cir.1987) (citing *District of Columbia v. White,* 442 A.2d 159, 164 (D.C.App.1982)).