**Daniel FREEMAN, Plaintiff,**

v.

**CASE CORPORATION, Defendant.**

**Civil A. No. 94–0063.**

United States District Court,
W.D. Virginia,
Abingdon Division.

April 19, 1996.

J.F. Taylor, J.K. Givens, Dothan, AL, and Thomas Dossett, Kingsport, TN, for Plaintiff.

Michael Gladstone and Dabney Carr, Richmond, VA, for Defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, Senior District Judge.

This products liability case is before the court pursuant to 28 U.S.C. § 1332. Plaintiff Daniel Freeman was injured in a tractor accident. Freeman sued defendant Case Corporation ("Case") under theories of defective design and breach of warranty, and, following a jury trial, was awarded $3.8 million. Case now moves for judgment as a matter of law, or, in the alternative, for a new trial, and also moves for remittitur of the damages awarded against it. The motion for judgment as a matter of law is granted.

## FACTS

Daniel Freeman ("Freeman") is an experienced owner and operator of a wide variety of heavy and light industrial, home, and recreational equipment. Before buying the Case 1130 tractor that is the subject of this case, Freeman had used a smaller John Deere riding mower for many years to mow his lawn. The Deere comes equipped with an operator presence control ("OPC"), a safety device that quickly stops the mower

blades if the operator's weight leaves the seat. Freeman decided to purchase a Case 1130 after seeing and admiring one owned by an acquaintance. He visited a dealer, where he requested a Case 1130 and asked that it be fitted with a belly mower attachment. The tractor, so equipped, was later delivered to his home.

The Case 1130 does not have an OPC, but it comes with a rollbar and a seat belt. Together, a rollbar and seat belt are known in the trade as a Rollover Protection System, or ROPS. A ROPS is designed to protect an operator in a tractor tipover situation: the rollbar keeps the tractor from rolling all the way over, or provides protection if it does, and the seat belt keeps the operator within the zone of safety.

Upon receiving his Case 1130, Freeman examined portions of the accompanying manual, and also inspected the tractor itself. Prior to the accident, he had mowed his yard twice and spread fertilizer once with the tractor. On the day of his injury, Freeman was not using the seat belt. While mowing near a steep embankment in his back yard, Freeman drove the tractor over a partially buried boulder. Although the Deere had never done so, the mower blades of the Case 1130, being set slightly lower, struck the top of the boulder. Freeman immediately stopped the tractor, depressed the clutch to disengage power to the blades and the wheels, and raised the mower deck so that the blades would not strike the rock when restarted. His plan was to then release the clutch to spin the blades in the air, in order to determine if they had been warped by striking the rock. Freeman claims that his foot was on the brake pedal, which is located in close proximity to the speed ratio control pedal ("SRC").[1] He in fact had both the brake and the SRC depressed. Thus, when he released the clutch, the tractor moved forward over the edge of the embankment. Freeman was unable to stop or to regain control of the tractor. He leapt from the machine, but was struck by the blades and

severely injured as the tractor rolled down the hill.

## ANALYSIS

A postverdict motion for judgment as a matter of law is evaluated by the same standard as one made during trial. *See Crown Central Petroleum Corp. v. Brice*, 427 F.Supp. 638, 640 (E.D.Va.1977). The standard for a party to receive judgment as a matter of law is a high one. The court will construe all evidence and inferences in the light most favorable to the non-moving party, and will grant the motion only if a reasonable trier of fact could reach no other conclusion. *Winant v. Bostic*, 5 F.3d 767, 774 (4th Cir. 1993). In doing so, the court will consider neither the weight of the evidence nor the credibility of witnesses. *Singer v. Dungan*, 45 F.3d 823, 826 (4th Cir.1995); *L.M. Everhart Const. v. Jefferson County*, 2 F.3d 48, 51 (4th Cir.1993).

The standard for granting a new trial is lower than that for judgment as a matter of law. Under Rule 59, the court will weigh the evidence and the credibility of the witnesses, and may in its discretion grant a new trial if it considers the verdict to be against the clear weight of the evidence. *Poynter v. Ratcliff*, 874 F.2d 219, 223 (4th Cir.1989).

With these standards in mind, the court now turns to the issues before it. Case's brief sets forth seven major arguments or classes of arguments: (1) Freeman failed to present sufficient evidence of an unreasonably dangerous design defect; (2) Freeman failed to present sufficient evidence that the implied warranty of fitness for a particular purpose was breached; (3) Freeman failed to prove that the alleged defects were the proximate cause of his injuries; (4) the expert testimony offered by Freeman should have been excluded as inadmissible; (5) the affirmative defenses of open and obvious danger, contributory negligence, assumption of the risk, and unforeseeable misuse bar recovery; (6) two jurors improperly tested the tractor during a showing; and (7) the verdict was excessive. Although the court's decision to

---

1. This pedal, which makes the tractor move forward, is analogous to an automobile's accelerator.

grant Case's motion for judgment as a matter of law renders many of Case's arguments moot, the issues raised are of legal interest and are likely to be useful to any court that may review this decision. Each shall be discussed in turn.

### I. Evidence of Unreasonably Dangerous Defect

At trial, Freeman attempted to prove two design defects in the Case 1130 tractor. First, he presented evidence that the brake pedal was placed dangerously close to the SRC, and that this proximity created an unacceptable risk of inadvertent engagement of the SRC by an operator trying to brake. Second, he contended that the absence of an OPC made the tractor unreasonably dangerous.

■■■ Under Virginia law, two factors are relevant to the determination of whether a product contains an unreasonably dangerous defect: industry or government safety standards, and consumer expectations. *Alevromagiros v. Hechinger Co.*, 993 F.2d 417, 421 (4th Cir.1993); *Mears v. General Motors*, 896 F.Supp. 548, 551 (E.D.Va.1995). Proving a violation either of a safety standard or of consumer expectations can discharge a plaintiff's burden. *Alevromagiros*, 993 F.2d at 422.[2] If published safety standards exist, the court will rely on these. Otherwise, it is "a matter of opinion of trained experts what design was safe for its intended use." *Ford Motor Co. v. Bartholomew*, 224 Va. 421, 430, 297 S.E.2d 675, 679 (1982). Merely conclusory expert testimony without substantial foundation will not discharge this burden. *Compare id.* (accepting sufficiency of expert testimony supported by manuals, data compiled by federal agency, consultation with

other experts, experiments with product in question and other similar products, and mockup of product) with *Alevromagiros*, 993 F.2d at 421 (rejecting sufficiency of expert testimony based solely on inspection of the product in question).[3]

■■■ To demonstrate consumer expectations, the plaintiff may use "evidence of actual industry practices, knowledge at the time of other injuries, knowledge of dangers, published literature, and ... direct evidence of what reasonable purchasers consider defective." *Alevromagiros*, 993 F.2d at 420–21 (citing *Sexton By and Through Sexton v. Bell Helmets*, 926 F.2d 331, 337 (4th Cir. 1991) (applying Kentucky law)). Expert testimony on this issue may not simply be conclusory, but "requires a factual examination of what society demanded or expected from a product." *Sexton*, 926 F.2d at 337.

### A. Pedal Configuration

■■■ Freeman offered the expert testimony of Smith Reed, a mechanical engineer, to demonstrate that both the pedal configuration and absence of an OPC were unreasonably dangerous design defects. Reed testified to no published government or industry standard violated by the pedal configuration.[4] The court must therefore determine whether Reed's testimony was sufficient to establish violation of an applicable unpublished safety standard. *Bartholomew*, 224 Va. at 430, 297 S.E.2d at 679. Reed stated that, in preparation for his testimony, he reviewed extensive trade literature and notes pertaining to the design of the Case 1130 and of other tractors of varying sizes and configurations, the design of tractors generally, trade journals, accident statistics, industry and military

---

**2.** The court misstated this fact in its decision in *Lemons v. Ryder Truck Rental, Inc.*, 906 F.Supp. 328, 331 (W.D.Va.1995), where it said that the issue of consumer expectations is reached only if the plaintiff fails to demonstrate violation of a safety standard. The court knows of no Virginia case in which consumer expectations were considered without first or simultaneously considering the proof offered of violation of a safety standard, but it appears that such an analysis is possible under Virginia law.

**3.** This is not an issue of the admissibility of proffered expert testimony, *see generally* Part IV

of this Opinion, but simply a restatement of the familiar rule that a party with the burden of proof must come forward with enough evidence to sustain a verdict in its favor or face an adverse judgment as a matter of law. *See Alevromagiros*, 993 F.2d at 421.

**4.** Although Reed testified in a deposition that ANSI 335.4 had been violated by the pedal configuration, he stated at trial that upon reconsideration he could not maintain this position. Partial Trial Transcript ("Transcript") for 10/25/95 at 62.

specifications, and other assorted materials. Transcript for 10/25/95 at 18–24. Reed inspected the tractor that injured Freeman, and performed "tests" on it by manipulating various controls, operating the tractor while attempting to recreate the sudden forward movement described by Freeman, and placing his foot on the brake and SRC pedals to test his theory that both could be engaged simultaneously. *Id.* at 28–29. He stated that his opinion that the pedal configuration was a design defect was based on "sound engineering judgment," on "what the competition is doing," and on various standards that were either not proven or not relevant. *Id.* at 39–40. Reed's "sound engineering judgment" was not a basis for his opinion, but rather a mere restatement of that opinion. Reed characterized his "sound engineering judgment" as follows: "[w]hen one knows that it is possible to cause a machine to unexpectedly come on, spontaneously start moving, and when one has the ability to minimize or eliminate the problem by the design and when the design has not been eliminated ... the design should not be released for production." *Id.* at 39.

The foundation for Reed's opinion is somewhere between the extensive testing found sufficient in *Bartholomew* and the near-total absence of evidence rejected in *Alevromagiros*. The primary difference between *Alevromagiros* and this case is that Reed reviewed extensive literature prior to making his inspection. Whether this is sufficient is a difficult question, given the dearth of guidance on this subject in Virginia law. The court holds that Reed's testimony was not sufficient to carry plaintiff's burden, since nothing suggests that the literature reviewed significantly bolstered Reed's opinion that the design of the pedals was defective.[5]

This holding would ordinarily require the court to enter judgment as a matter of law for Case on this issue, but the court declines to do so, since Freeman's inability to prove a design defect may have been due to judicial error rather than his own lack of evidence. Reed's reference to the design practices of Case's competitors, one of the bases he mentioned for his opinion that the pedals were defective, may have foreshadowed illuminating testimony, both as to the issue of the applicable safety standard in the industry and as to what consumers expected. *See Redman v. Sentry Group, Inc.,* 907 F.Supp. 180, 183 n. 2 (W.D.Va.1995) (in absence of published standards, industry practice can be evidence of industry standards); *Alevromagiros,* 993 F.2d at 420–21 (industry practice relevant to consumer expectations). However, the court did not permit either side to introduce evidence of industry practice with respect to pedal placement. Transcript for 10/25/95 at 41. It is unclear whether this was erroneous under applicable Fourth Circuit law. *Alevromagiros,* which states that industry practices are relevant to determining consumer expectations, 993 F.2d at 420, also upholds a District Court's decision to exclude evidence of safety features on a competing product, *id.* at 421–22.[6] While it is unnecessary to reach the issue at this time due to its decision to grant Case's motion for judgment as a matter of law, if that decision is reversed and the case remanded, the court may then find it necessary to grant a new trial at which evidence of industry practices with respect to pedal placement would be heard.

## B. Operator Presence Control

 Reed testified that the absence of an OPC violated ANSI B71.1, a standard that by its terms applies to "lawn and garden" tractors. Both sides vigorously contested

---

**5.** It is not clear that plaintiff could under any circumstances sustain the burden of proving that the pedal configuration of the tractor was defective. *See* footnote 12, *infra.* Because of its decision to grant judgment as a matter of law to Case on other grounds, the court does not reach this issue.

**6.** The language used hints that it may have been the fact that only one competing product was offered rather than the relevance of industry practice generally that led to the District Court's

decision to exclude the proffered evidence. *Alevromagiros,* 993 F.2d at 422 (noting that the trial judge stated that "bringing in *one particular competitor's ladder* ... and making that an industry standard, that is terribly misleading") (emphasis added); *Anderson v. National R.R. Passenger Corp.,* 866 F.Supp. 937, 944 (E.D.Va.1994) (citing *Alevromagiros* for proposition that a single example cannot be used to establish an industry standard).

the issue of whether the Case 1130 is a lawn and garden tractor, presenting evidence about its size, weight, power, and "drawbar pull," a measure of pulling capacity. Although the 1990 ANSI definition of "lawn and garden tractor" excludes those with a drawbar pull over 1500 pounds, which the Case 1130 in question apparently exceeded, no such definition existed at the time the tractor was manufactured. In addition, Freeman presented evidence that Case advertised the tractor for suburban lawn care applications. The jury could quite reasonably have concluded that ANSI B71.1 was applicable to this tractor, and such a conclusion is not against the clear weight of the evidence. The court thus denies Case's motion for judgment as a matter of law and its motion for a new trial with respect to this issue.

*II. Evidence of Breach of Implied Warranties*

 Case contends that Freeman did not present sufficient evidence that it breached the implied warranty of fitness for a particular purpose. Under Virginia law, to establish a breach of the warranty of fitness, Freeman must prove (1) that Case had reason to know the particular purpose for which Freeman required the equipment; (2) that Case had reason to know Freeman was relying upon Case's skill or judgment to furnish equipment meeting his requirements; and (3) that Freeman in fact relied upon Case's skill or judgment. Va.Code § 8.2–315; *Medcom, Inc. v. C. Arthur Weaver Co., Inc.*, 232 Va. 80, 84–85, 348 S.E.2d 243, 246 (1986). Case points to Freeman's testimony that he decided to buy a Case 1130 because he had seen a privately owned one in operation and "liked the looks" of it, Transcript for 10/23/95 at 51, and that when he purchased the tractor he did not speak to anyone at the dealership about the tractor and did not seek the advice of the dealer about it. Transcript for 10/24/95 at 61. Freeman responds that he

ordered a mower attachment with the tractor, without specifying the model he desired, and was supplied with a particular model. This, he contends, is sufficient to create a jury question as to the issue of the warranty of fitness for a particular purpose. While this argument may be valid if the mower attachment was alleged to be defective, it appears from the facts that this particular piece of equipment worked all too well. The court grants Case's motion for judgment as a matter of law as to the implied warranty of fitness for a particular purpose.

In addition to the warranty of fitness, Freeman argued that Case breached the implied warranty of merchantability. The court assumes without deciding that the evidence submitted as to defect was sufficient to carry the burden of proving a breach of this warranty. Unfortunately, the issue of breach of the two implied warranties was presented to the jury in the form of a combined special interrogatory, asking "[d]o you find by a preponderance of the evidence that the defendant breached an implied warranty of merchantability and/or fitness for a particular use and that the vehicle was thereby unreasonably dangerous?" The jury responded to this question in the affirmative. Because it is conceivable that the jury believed that the warranty of fitness for a particular purpose was breached and the warranty of merchantability was not, the court cannot conclude that the insufficiency of evidence of breach of the warranty of fitness is moot. Should it be required to confront the issue due to a remand, the court will be forced to order a new trial as to the issue of the warranty of merchantability.[7]

*III. Proximate Cause*

 Virginia applies a "but for" test to tort liability. *See Wells v. Whitaker*, 207 Va. 616, 622, 151 S.E.2d 422, 428 (1966). Unless the alleged defect is a proximate cause of the plaintiff's injuries, there can be no recovery. *Butler v. Navistar International Transp. Corp.*, 809 F.Supp. 1202, 1207

7. The only way that the court could be forced to address this issue is if the judgment as a matter of law is reversed as to the issue of open and obvious defect (which bars recovery under both negligence and implied warranty theories) but upheld as to the issue of contributory negligence

(which bars recovery only under negligence). This would squarely present the issue of whether some implied warranty was in fact breached, since Freeman could then recover only if he proved a breach of warranty.

(W.D.Va.1991). The burden is on the plaintiff to show to a "reasonable certainty" that the alleged defect caused his injury. *Stokes v. L. Geismar, S.A.*, 815 F.Supp. 904, 908 (E.D.Va.1993), *aff'd* 16 F.3d 411 (4th Cir. 1994). Freeman's theory of the accident is that he inadvertently engaged the SRC pedal while deliberately engaging the brake, and that this was due to the dangerous proximity of these pedals. Freeman maintains that the tractor would not have rolled forward after being fully stopped unless the SRC was engaged, *see, e.g.*, Transcript for 10/24/95 at 93–96, and so his theory directly puts to the finder of fact the question of whether the alleged defect was a proximate cause of his engaging the SRC. Given the jury's conclusion that Case is liable, it is obvious that it accepted Freeman's theory of the accident and thus found that the defect was a proximate cause of the accident. This finding was not against the clear weight of the evidence. Case's motions for judgment as a matter of law and for a new trial are denied as to this issue.

■ Case argues that the absence of an OPC was not a proximate cause of the accident.[8] According to the applicable industry standard, ANSI B71.1, an OPC must stop the mower blades within five seconds. Case contends that there is no evidence that the accident took more than five seconds to occur. Since the blades would therefore have been turning when they struck Freeman, Case argues, the absence of an OPC is not a cause of the accident.

The evidence put on by Freeman was sufficient to discharge his burden of proof on this issue, because the jury could have concluded from the evidence presented that more than five seconds elapsed from the time Freeman left the seat to the time when he was struck by the blades. It is undisputed that Freeman jumped from the tractor and traveled forty feet from where he left the tractor.[9]

After finding himself there, he thought "for an instant" that he was safe, but was then struck by the tractor as it rolled down the hill behind him. There was evidence that the tractor struck at least one tree before rolling over Freeman, that the blades struck numerous rocks and other objects that may have stopped them had an OPC disengaged the power to them, and that the tractor did not travel the forty feet to Freeman in a straight line. The jury could well have concluded from this reconstruction of events that it took the tractor more than five seconds to reach the point where Freeman was struck. In addition, although Freeman's expert testified that he did not know if Freeman would have been injured less severely if the blades had been moving more slowly, it is well within the competence of a lay juror to conclude that blades disengaged from the engine and decelerating would do less damage than blades at full speed and power. The jury's conclusion that the defects alleged were the proximate cause of Freeman's injury was not against the weight of the evidence. Case's motions are denied as to the issue of proximate cause.

### IV. Admissibility of Expert Testimony

■ On September 12, 1995, Case filed a motion in limine seeking the exclusion of the testimony of Freeman's mechanical engineering expert, Reed, under the authority of *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). In an unpublished memorandum opinion, the court denied the motion, holding that *Daubert* applies only to scientific evidence, of which Reed's proposed testimony was not an example. Case now revisits its arguments and asks the court to reconsider its ruling in light of seven recently decided cases. The authorities cited by Case are virtually identical in kind to those the court has previously rejected, and so the court will not again, as it did before, review each in

---

8. It is not clear that the absence of an OPC is relevant to causing "the accident," if that term means the chain of events that caused the tractor to roll down the hill. *Cf.* discussion of Virginia law on nonuse of seat belts in Part V(B) of this Opinion (stating that, under Virginia law, evidence of nonuse of seat belts is excluded because irrelevant to the cause of the accident). Because it finds for Freeman on the issue of causation as to both alleged defects, however, the court does not reach this issue.

9. Whether Freeman traveled the forty feet entirely in the air or partially on the ground is a disputed fact, Transcript for 10/24/95 at 104–107, and one properly left to the jury to decide.

detail. Of the cases cited, three involved testimony that was clearly scientific in nature. *Sorensen By and Through Dunbar v. Shaklee Corp.*, 31 F.3d 638, 647 n. 15 (8th Cir.1994) (toxicology and genetic mutation); *U.S. v. Rincon*, 984 F.2d 1003 (9th Cir.1993), *aff'd without opinion sub nom Rincon v. U.S.*, 510 U.S. 801, 114 S.Ct. 41, 126 L.Ed.2d 12 (1993) (psychological testimony about the reliability of eyewitness identification); *Arnold v. Riddell, Inc.*, 882 F.Supp. 979 (D.Kan.1995) (biomechanical aspects of spinal cord injury). Two of the cases are inapplicable because they did not apply *Daubert* in a relevant fashion. *Buckman v. Bombardier Corp.*, 893 F.Supp. 547 (E.D.N.C.1995) (applying *Daubert* where party offering testimony claimed that it was scientific and based on comparative tests); *Anderson v. National R.R. Pass. Corp.*, 866 F.Supp. 937, 943–45 (E.D.Va.1994) (citing *Daubert* for proposition that expert testimony must be based on some specialized knowledge and must have a factual basis).

The court notes that there appears to be a number of cases that apply *Daubert* to testimony the scientific nature of which is doubtful. *See, e.g., American & Foreign Ins. Co. v. General Electric Co.*, 45 F.3d 135 (6th Cir.1995) (testimony of an electrical engineer as to testing he performed on a circuit breaker); *Pestel v. Vermeer Manufacturing Co.*, 64 F.3d 382 (8th Cir.1995) (testimony about need for safety guard on stump cutter); *Byrnes v. Honda Motor Co.*, 887 F.Supp. 279 (S.D.Fla.1994) (testimony about need for leg protection on motorcycle). Upon close scrutiny of *Daubert* and related authorities, the court can only conclude that these cases are misguided. The context of *Daubert*, the validity of "reanalysis" of raw data of epidemiological studies, was unquestionably scientific, and in its reasoning the Supreme Court relied heavily upon works in the history and philosophy of science. *See* 509 U.S. at 591–93, 113 S.Ct. at 2796–97 (citing Carl Hempel's *Philosophy of Natural Science*, Karl Popper's *Conjectures and Refutations*, and several scholarly books and articles on peer review). Furthermore, the Court explicitly stated that its holding was addressed to the context of scientific evidence. After quoting Fed.R.Evid. 702's mandate that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue" an expert "may testify thereto," the Court set forth the standards governing testimony pertaining to "*scientific ... knowledge*," and clarified in a footnote that "Rule 702 *also applies* to 'technical, or other specialized knowledge.' *Our discussion is limited to the scientific context* because that is the nature of the expertise offered here.". 509 U.S. at 590 n. 8, 113 S.Ct. at 2795, 2795 n. 8 (emphasis added).

That *Daubert* is limited to a scientific context has been widely recognized. The Ninth Circuit, addressing the admissibility of the evidence in the *Daubert* case on remand, recognized that the Supreme Court's decision was addressed to the "scientific ... knowledge" aspect of Rule 702. *Daubert v. Merrell Dow Pharmaceuticals*, 43 F.3d 1311, 1316 (9th Cir.1995). In another case remanded to the Ninth Circuit for reconsideration in light of *Daubert*, the court again recognized that *Daubert* applied only to scientific testimony. *U.S. v. Rincon*, 28 F.3d 921, 923 n. 3 (9th Cir.1994). A correct understanding of *Daubert* is not limited to the Ninth Circuit. *See, e.g., Benedi v. McNeil–P.P.C., Inc.*, 66 F.3d 1378, 1383 (4th Cir.1995) (stating that *Daubert* interpreted "the admissibility of expert scientific evidence"); *Iacobelli Const., Inc. v. County of Monroe*, 32 F.3d 19, 25 (2d Cir.1994) (*Daubert* inapplicable to expert testimony on construction site conditions, contract documents and project results, because such testimony is not scientific); *Dunbar*, 31 F.3d at 647 n. 15 (listing 33 cases applying *Daubert* to such patently scientific matters as DNA analysis, chromatography, economic testimony, and psychological syndromes). The court must conclude that cases applying *Daubert* to merely technical testimony are aberrational. In any event, unless and until it is compelled by binding precedent to extend *Daubert* to a nonscientific context such as the examination of a tractor by a mechanical engineer, this court shall decline to do so. Case's motions as to the admissibility of Reed's testimony are denied.

## V. Affirmative Defenses

Case has advanced four affirmative defenses which, though distinct, share a core of relevant facts and so will be addressed together. Case contends that the alleged defects were open and obvious, that Freeman's actions amounted to contributory negligence, that Freeman assumed the risk of his injury, and that Freeman's actions constituted unforeseeable misuse of the tractor. The court shall address each defense in turn.[10]

### A. Open and obvious

 Most jurisdictions have rejected the open and obvious defense to claims of design defect. *See Restatement (Third) of Torts,* Tentative Draft No. 2, § 2, Comment at V(4) (enumerating cases). Although the Fourth Circuit has recently held open the possibility that Virginia law could move in this direction, *Austin v. Clark Equip. Co.,* 48 F.3d 833, 837 (4th Cir.1995) (*Austin I*) ("[w]e are not excluding the possibility that there may be an unreasonably dangerous product with an open and obvious defect"), it is clear that Virginia has not adopted the Restatement view. *See Austin v. Clark Equip. Co.,* 821 F.Supp. 1130, 1133 (W.D.Va.1993) (*Austin II*) (manufacturer not liable for defective design where danger is open and obvious); *Harris–Teeter, Inc. v. Burroughs,* 241 Va. 1, 4, 399 S.E.2d 801, 802 (1991) (provider of cake not liable in negligence where plastic decoration swallowed by plaintiff was in plain view); *Wood v. Bass Pro Shops, Inc.,* 250 Va.

297, 301, 462 S.E.2d 101, 103 (1995) (no recovery under implied warranty where alleged defect is "known, visible or obvious"). A plaintiff will be barred from recovering if he actually did know or should have known of the risk that caused his injury. *Austin I,* 48 F.3d at 836 (stating that risk is open and obvious if user "is or should be aware of the obvious danger"); *Scott v. City of Lynchburg,* 241 Va. 64, 66–67, 399 S.E.2d 809, 810 (1991) (actual knowledge of open and obvious danger bars recovery); *Harris–Teeter,* 241 Va. at 4, 399 S.E.2d at 802 (holding that danger in plain view bars recovery, without discussing any evidence of actual knowledge); *Spangler v. Kranco,* 481 F.2d 373, 375 (4th Cir.1973) (holding that lack of bell on crane was open and obvious without discussing any evidence of actual knowledge). The open and obvious rule applies both to negligence and to breach of warranty claims. *Wood,* 250 Va. at 301, 462 S.E.2d at 103. This rule of law has been applied to bar recovery where the plaintiff complains of the absence of such features as a safety canopy on a coal mine roof bolter, *Belcher v. J.H. Fletcher & Co.,* No. 93–2424, 1995 U.S.App. LEXIS 11659, 1995 WL 300030 (4th Cir. May 18, 1995), a bell on a crane, *Spangler,* 481 F.2d at 375, and rear view mirrors, warning lights and alarms on a forklift, *Austin I,* 48 F.3d at 836. The question of whether an alleged defect is open and obvious is for the jury to decide, unless reasonable minds could not differ on the issue. *Id.*

---

**10.** These four defenses are so closely related that they are routinely conflated or at least analyzed simultaneously, but are nonetheless distinct. The law applicable to each defense is set forth in some detail in the appropriate section, but for ease of reference, the following chart distills the applicable Virginia law. For each defense, the chart indicates whether it serves as a bar in negligence and in warranty, whether an objective or a subjective standard applies, and whose point of view is relevant. "Warranty" in this context refers to any implied warranty, whether of merchantability or fitness for a particular purpose. *See Wood v. Bass Pro Shops,* 250 Va. 297, 300–01, 462 S.E.2d 101, 103 (1995) (setting forth which defenses are applicable to "implied warranty" cases and which are not). The entries in the point of view row assume a conventional case in which an injured plaintiff sues a defendant; appropriate adjustments must be made if the positions are reversed, or if there are counterclaims.

| | Open/Obvious | Contrib. Negl. | Assumpt. Risk | Unfrsbl. Misuse |
|---|---|---|---|---|
| Bar in Negligence | Yes | Yes | Yes | Yes |
| Bar in Warranty | Yes | No | No | Yes |
| Obj./Subj. Standard | Objective | Objective | Subjective | Objective |
| Whose Point of View | Plaintiff's | Plaintiff's | Plaintiff's | Defendant's |

 Case contends that the dangerous proximity of the brake and SRC pedals is patently obvious upon inspection, and that the absence of an OPC is obvious upon inspecting the machine, rising from the seat while the mower is operating, or reading the manual. Freeman responds that while the proximity of the brake and SRC pedals may be obvious, the danger presented by that proximity is not obvious. In addition, Freeman argues, the OPC is a hidden mechanism, not readily apparent or visible to an operator.

Freeman's argument that knowledge of the proximity of the pedals does not amount to knowledge of the danger posed by that proximity is a distinction without a difference. Such a distinction could under some circumstances defeat an open and obvious defense, as for example when a mechanism in plain view has an obscure and unexpected effect when engaged. No such circumstances exist here.[11] Freeman knew where the SRC pedal was, knew that it was close to the brake, and knew that depressing it would cause the tractor to move forward. Transcript for 11/1/95 at 7–14, 7–35. The risk of depressing the SRC, or of depressing a pedal where he knew the SRC to be without looking to see which pedal was depressed, was an open and obvious one.[12]

The absence of an OPC was also open and obvious. Freeman had extensive experience with an OPC-equipped John Deere riding mower, had worked all his adult life with machinery of all types, had inspected the Case 1130 and read portions of the operator's manual, and had mowed the lawn twice with it prior to the accident.[13] Although an OPC is a "hidden" mechanism, it is one that has a noticeable effect upon the operation of a tractor-mower: when the operator's weight leaves the seat, the blades stop within five seconds. Given Freeman's experience, he either knew or should have known that the Case 1130 lacked an OPC, and so this absence was open and obvious.

The court has previously ruled that the pedal configuration and the absence of an OPC were open and obvious as a matter of law. Transcript for 10/31/95 at 6A–25 to 6A–26. This ruling was made in the course of dismissing Freeman's failure to warn claim against Case, but it disposes of the issues of negligence and breach of warranty as well.[14] Although some of the Virginia cases establishing the open and obvious defense are failure to warn cases, *see, e.g., Austin I,* 48 F.3d at 836; *Spangler,* 481 F.2d at 375, it is clear that the defense is applicable outside of the failure to warn context. *See, e.g., Wood,* 250 Va. at 301, 462 S.E.2d at 103 (implied warranty); *Harris–Teeter,* 241 Va. at 4, 399 S.E.2d at 802 (negligence). Judgment as a matter of law is accordingly granted to Case as to both the design defect and the implied warranty claims because the risks were open and obvious.

---

11. Prior to hearing testimony, the court felt that this issue was uncertain enough to go to the jury. *Memorandum Opinion* of Oct. 13, 1995 at 12. For the reasons stated, the court is no longer of this opinion.

12. The situation is analogous to that posed by the proximity of the brake and accelerator pedals in an automobile. In part to facilitate rapid access to both, these pedals are adjacent to one another and are often close enough to permit simultaneous engagement. This fact does not, however, constitute defective design. *See Jackson v. Mazda Motor of America, Inc.,* 872 F.Supp. 1464, 1467 (D.Md.1995) (where plaintiff complains of sudden acceleration and testified that her foot was on the brake, but the only plausible cause of accident was inadvertent engagement of accelerator, no design defect exists); *Wells v. Jeep Corp.,* 532 P.2d 595, 597–98 (Wyo.1975) (fact that driver inadvertently engaged accelerator while depressing brake does not render placement of accelerator and brake pedals defective). Be-

cause of the court's holding today granting judgment as a matter of law to Case, it is unnecessary to address the issue of whether a design defect could be proven to exist with respect to the tractor's pedal configuration. The court's holding at this time is simply that the pedal configuration, *if* defective, was open and obvious.

13. Although the tractor had nineteen hours of use recorded on a use monitor, no more than two uses of the tractor to mow his lawn, and one to spread fertilizer, for at least four hours of total use, are clearly attributable to Freeman. *See* Transcript for 11/1/95 at 7–13, 7–26 to 7–27; Transcript for 10/24/95 at 82.

14. This ruling was made from the bench on the sixth day of trial, and the applicability of the open and obvious defense to the design defect and warranty claims was neither briefed nor argued at that time.

## B. Contributory negligence

Virginia follows a contributory negligence regime for products liability cases grounded in negligence. *Jones v. Meat Packers Equip. Co.*, 723 F.2d 370, 373 (4th Cir.1983); *Hoban v. Grumman Corp.*, 717 F.Supp. 1129, 1136 (E.D.Va.1989). A plaintiff's contributory negligence will not, however, bar his recovery under a breach of warranty theory. *Wood*, 250 Va. at 300–01, 462 S.E.2d at 103. A plaintiff's negligence claim is barred by his contributory negligence if he failed to act as a reasonable person would have acted for his own safety under the circumstances. *Artrip v. E.E. Berry Equip. Co.*, 240 Va. 354, 358, 397 S.E.2d 821, 824 (1990). The standard is an objective one. *Id.* Unless reasonable minds could not differ on the issue, it is one for jury to decide. *Id.* at 358, 397 S.E.2d at 823.

Case contends that the following actions by Freeman constitute contributory negligence: failing to read the operating manuals and the safety warnings therein in detail, failing to wear a seat belt, and operating the tractor close to an embankment. Once the tractor was stopped at the edge of the embankment, Case argues that Freeman compounded his earlier acts of negligence by reengaging the mower blade rather than retreating in reverse or taking steps to immobilize the tractor, and by "popping his foot off the clutch," rather than releasing it slowly.[15]

As an initial matter, the fact that Freeman was not wearing a seat belt cannot be taken into consideration under Virginia law. Virginia has never permitted evidence of failure to wear a seat belt to demonstrate the injured party's negligence in automobile cases. Until 1989, such evidence could be presented by the defense to reduce damages, but this practice was eliminated by Va.Code § 46.2–1094(E), which forbids evidence of nonuse of seat belts in a motor vehicle with respect to both liability and damages. Although no Virginia court has addressed the issue of whether automotive seat belt laws pertain also to the use of seat belts in a nonautomotive context, the Fourth Circuit has addressed the admissibility of evidence of nonuse of safety devices generally under Virginia law. *Garrett v. Desa Industries, Inc.*, 705 F.2d 721 (4th Cir.1983). The plaintiff in *Garrett* was injured while using a stud driver without the included safety goggles. The trial judge permitted the defendant to raise the issue of nonuse of the safety goggles, and the Fourth Circuit reversed, analogizing the nonuse to the failure to wear a seat belt. The court considered persuasive the rationale of the leading Virginia case on the exclusion of evidence of failure to wear a seat belt, *Wilson v. Volkswagen of America*, 445 F.Supp. 1368 (E.D.Va.1978):

> We believe that the analysis in *Wilson* is both persuasive and directly applicable to the nonuse of safety goggles. The stud driver would have exploded whether or not Garrett was wearing safety goggles. His nonuse of the goggles was not a proximate cause of that explosion. Thus, since Desa did not demonstrate that Garrett's eye injury could have been avoided or would have been less severe had he been wearing the goggles, the requested jury instructions [that nonuse of the goggles was not evidence of contributory negligence] should have been granted. Furthermore, on remand, Desa may not introduce evidence of the nonuse unless and until it demonstrates the extent to which Garrett's injuries could have been avoided by wearing safety goggles.

*Garrett*, 705 F.2d at 726. Although it is clear that in 1983 the Fourth Circuit, faced with the case at bar, would have permitted evidence of nonuse of the seat belt to show mitigation of damages, it appears that it would not permit even this use today. At the time of the *Garrett* decision, Va.Code § 46.2–1094(E) did not exist. The Fourth Circuit simply applied then-existing Virginia law applicable to seat belts to the issue of nonuse of

---

15. How quickly Freeman removed his foot from the clutch was a matter of significant dispute at trial. Transcript for 11/1/95 at 7–21; Transcript for 10/24/95 at 91–93. According to Freeman, however, the Case 1130 transmission is such that the motor engages fully and without slippage regardless of the speed of clutch release. Transcript for 10/24/95 at 92. The analysis that follows assumes without deciding that Freeman released the clutch in a normal fashion, as he now claims.

safety devices generally, finding the purpose and logic of the seat belt law analogous. Since neither the purpose nor the logic has changed, the court must conclude that non-use of a safety device cannot be used in Virginia either in support of a defense to liability or in mitigation of damages. Freeman's nonuse of the seat belt will therefore not be considered in the court's analysis of any of Case's affirmative defenses.[16]

■ The court now turns to Case's remaining contentions. Freeman's alleged failure to read the operator's manual is not so clear as Case maintains. Freeman testified to reading the manual, or parts thereof, in at least two places in his deposition. Freeman Depo. at 127, 155. In addition, he testified to the fact that he examined each of the controls and its function before starting the tractor for the first time. *Id.* at 115. The Case 1130 has a number of instructions printed directly on or near the controls, and so his inspection could well have included reading these as well. The court is most unwilling to conclude that a failure to read an operator's manual cover to cover is so clearly negligent that reasonable minds could not disagree. *Cf. Butler v. Navistar International Transp. Corp.,* 809 F.Supp. 1202, 1208 n. 9 (W.D.Va. 1991) (warning in tractor manual does not discharge manufacturer's duty to warn absent evidence that plaintiff read the manual). The matter was properly submitted to the jury, and the jury's decision was not against the weight of the evidence.

■ The testimony presented at trial on the issue of operating the tractor near an embankment was somewhat ambiguous as to the degree of risk presented. For example, Case's expert, Bernard Ross, testified that:

the operator's manual says clearly that you should avoid operating on slopes and be very careful. And I'm not condemning Mr. Freeman for trying to mow his lawn up to the, close to the edge, but it is mentioned in the operator's manual that this is risky business, I mean, requires more caution, and more concern, and attention.

Transcript for 10/26/95 at 4–114 to 4–115 (testimony of Bernard Ross). It appears that simply operating the tractor close to an embankment is not necessarily contributory negligence. However, Freeman's decision to mow near the embankment must be considered in combination with his other actions. The evidence showed that Freeman stopped the tractor at or near the edge of the embankment, placed his foot in the immediate area where he knew the SRC pedal to be without checking to ensure that his foot was not on that pedal, depressed the SRC together with the brake,[17] and then released the clutch. Freeman knew that releasing the clutch with the SRC engaged would cause the tractor to move forward, Transcript for 11/1/95 at 7–35, but did not ensure that his foot was not on the SRC. He chose to do this rather than turn off the tractor, as the manual recommends when the tractor strikes an obstruction. He also could have eliminated the risk by placing the tractor in neutral

16. Given Virginia's expansion of the scope of the exclusion of evidence of nonuse of a seat belt since *Garrett,* the Fourth Circuit may wish to reconsider its holding in that case, at least in circumstances such as are now before the court. Faced with the problem of providing for operator safety in the event of tractor tipover, Case provided an integrated safety system well-designed for the purpose, the ROPS. The failure of an operator to use a seat belt renders a ROPS useless as a safety device, reducing a system that would ordinarily prevent or greatly reduce injury to a nullity. It seems unduly harsh not to permit Case to argue that this nonuse was relevant either to negligence *or* to mitigation of damages, but such appears to be the law in Virginia. *Compare Long v. Deere & Co.,* 238 Kan. 766, 715 P.2d 1023, 1030 (1986) (finding that Kansas statute excluding evidence of nonuse of seat belts in automobile cases has no bearing on issue of nonuse of

seat belts with construction machinery "under conditions which admittedly will result in death or injury in a roll over unless seat belts are used"). There is no reason to suppose that the concerns that motivated the Virginia General Assembly to bar evidence of the nonuse of seat belts in automobile cases are identical to those relevant outside that context.

17. Freeman testified that he was "positive" that he had his foot on the brake, Transcript for 10/24/95 at 6, and Freeman's theory of the accident is that the tractor could not have moved forward unless the SRC was also depressed. Transcript for 10/24/95 at 93–95. The issue of whether Freeman did or did not actually depress the brake pedal is not relevant to the court's reasoning on this issue.

or by backing away from the edge before restarting the blades. Transcript for 10/24/95 at 86; Transcript for 11/1/95 at 7–35. The court holds as a matter of law that Freeman did not act as a reasonable person would have acted for his own safety under the circumstances. *Artrip*, 240 Va. at 358, 397 S.E.2d at 824. This holding is in accord with, though not dependent upon, Virginia case law providing that a person who is aware of an open and obvious condition and, without excuse, forgets about the condition or ignores it thereby commits contributory negligence as a matter of law. *See Scott v. City of Lynchburg*, 241 Va. 64, 66–67, 399 S.E.2d 809, 810–11 (1991) (enumerating cases). Case's motion for judgment as a matter of law is therefore granted as to the negligence claim due to Freeman's contributory negligence.[18]

## C. Assumption of the risk

■■■■■ Assumption of the risk bars a plaintiff's recovery in negligence, but not under a warranty claim. *Wood*, 250 Va. at 301, 462 S.E.2d at 103. This defense focuses on the injured person's subjective state of mind, asking whether "plaintiff fully understood the nature and extent of a known danger and voluntarily exposed himself to it." *Artrip*, 240 Va. at 358, 397 S.E.2d at 824 (citing *Philip Morris, Inc. v. Emerson*, 235 Va. 380, 402–402, 368 S.E.2d 268, 280 (1988)). Unless reasonable minds could not differ on the issue, it is for the jury to decide. *Artrip*, 240 Va. at 358, 397 S.E.2d at 823.

Case contends that Freeman was aware of the proximity of the brake and SRC pedals, of the risks of mowing near an embankment, and of the danger posed by not wearing his seat belt, and that he voluntarily exposed himself to these risks. As before, the nonuse of the seat belt cannot be considered.

■■■■■ That a risk is open and obvious does not establish that a plaintiff "fully understood the nature and extent" of it. *Id.* Although the court today holds that the proximity of the brake and SRC pedals and the lack of an OPC were open and obvious, and that Freeman's actions constituted contribu-

tory negligence, the burden on Case as to these defenses was simply to show that Freeman knew or should have known of the risks. *Austin I*, 48 F.3d at 836 (open and obvious); *Artrip*, 240 Va. at 358, 397 S.E.2d at 823 (contributory negligence). The evidence was ample to discharge this burden, demonstrating as it did Freeman's extensive experience and the carelessness of his actions in light of that experience. However, this evidence does not rise to the level of discharging Case's burden to demonstrate "what the particular plaintiff *in fact* sees, knows, understands and appreciates." *Philip Morris*, 235 Va. at 402, 368 S.E.2d at 280 (quoting *Restatement (Second) of Torts* § 496D, Comment c (1965)) (emphasis added). The evidence presented was sufficient to support an inference that Freeman was actually aware of the risks, but was not so overwhelming as to compel such an inference. Because the court cannot say as a matter of law either that Freeman did or did not assume the risk of his injury, this issue was properly a matter for the jury, and the jury's decision was not against the clear weight of the evidence. Case's motions are accordingly denied as to this point.

## D. Unforeseeable misuse

■■■■■ The defense of unforeseeable misuse is available to a defendant sued under either negligence or warranty theories. *Wood*, 250 Va. at 301, 462 S.E.2d at 103. Although the language used to describe this defense sometimes suggests that the manufacturer's subjective state of mind is at issue, *see Featherall v. Firestone Tire and Rubber Co.*, 219 Va. 949, 964, 252 S.E.2d 358, 367 (1979) ("unforeseen" misuse); *Turner v. Manning, Maxwell & Moore*, 216 Va. 245, 252, 217 S.E.2d 863, 869 (1975) (no liability when product used in manner "not intended" for it), the decisions make it clear that an ordinary reasonableness standard applies. *See id.* (holding that use of crane to pry fused metal parts free was not a "reasonably foreseeable purpose"); *Featherall*, 219 Va. at 964, 252 S.E.2d at 368 (use of different manufacturer's parts with a product is not a use

---

**18.** As stated at the beginning of this section, this holding has no effect on the breach of warranty claim. *Wood*, 250 Va. at 300–01, 462 S.E.2d at 103.

that "should have been expected" by defendant). The issue is thus whether Freeman misused the tractor in a fashion not reasonably foreseeable to Case.

 The actions that allegedly constitute misuse are Freeman's failure to wear a seat belt, which cannot be considered, his decision to mow near the embankment, and his "popping" the clutch. Case contends that under Virginia law, a manufacturer is entitled to a presumption that its warnings will be heeded. This does not appear to be true. In *Besser Company v. Hansen,* 243 Va. 267, 415 S.E.2d 138 (1992), the case cited for this proposition, the court considered whether the manufacturer reasonably should have foreseen that an operator would fail to heed the warnings on a control panel. The court reasoned that "[n]or did Besser *have reason to know or foresee* that an operator would not realize that danger and heed the warnings on the panel." *Id.* at 277, 415 S.E.2d at 144 (emphasis added). In reaching this conclusion, the court relied in part upon the testimony of a witness that the risk posed by ignoring the panel instructions was obvious. *Id.* Such testimony would of course be irrelevant if a manufacturer was entitled to a presumption that a failure to heed its warnings is unforeseeable.

The court must therefore consider whether Case has demonstrated that it should not reasonably have foreseen such actions by operators as Freeman's decision to mow near an embankment. Case did not meet this burden. The use of riding mowers and of tractors with belly mowers on slopes, whether wise or not, is not an unknown phenomenon. In addition, the trial testimony of Case witness Bernard Ross, excerpted above, suggests only that "operating on slopes" should be avoided, and that mowing close to an embankment requires an increased level of caution. Transcript for 10/26/95 at 4–114 to 4–115. This evidence is insufficient to establish that Case did not and should not reasonably have foreseen that its 1130–series tractor might be used near the edge of an embankment.

As for Freeman's "popping" the clutch, evidence was presented from which the jury could conclude that Freeman released the clutch in a normal fashion. In any event, the rapid release of a clutch, an action Case characterizes as appropriate only during drag-racing or in an emergency, is certainly not unknown outside that context. For example, one of the difficult tasks in learning to drive an automobile with a manual transmission is mastering the skill of releasing the clutch neither too slowly nor too quickly. A person who, like Freeman, does not expect that his action will cause his conveyance to move, may well release the clutch rapidly, and this action may well be foreseeable. The foreseeability of this action, if indeed it occurred, was properly a matter for the jury.

Because the issue of foreseeable misuse was properly left to the jury, and because the jury's decision as to this issue was not against the clear weight of the evidence, Case's motions are denied.

## VI. Juror Testing of Tractor

 At trial the court allowed a "show" of the tractor involved in the accident, during which the parties pointed out various features that they believed to be important to the issue of liability. One of these features, the placement of the brake and SRC pedals, was the subject of a significant amount of expert testimony and a number of photographs. After the demonstration, the court granted the request of two jurors to sit in the tractor in order to inspect it more fully. During this examination, the jurors observed the placement of the pedals from the operator's viewpoint, and both placed their feet on the brake and SRC pedals and depressed them several times.

Case asserts that these actions were improper and resulted in the consideration of extraneous material by the jury, improperly influencing its decision. Case maintains that this conduct requires a new trial on all issues. This court concludes that the inspection and examination of the tractor by the two jurors in the presence of the court, counsel for both parties, and the remaining jurors, was not improper and does not mandate a new trial.

Both parties rely on *United States v. Beach,* 296 F.2d 153 (4th Cir.1961). In *Beach,* the jury convicted the defendant of

perjury for testifying that he had not heard adding machines in a house he often visited. During its deliberations, the jury requested and received an electric drop cord. The Fourth Circuit held that sending the drop cord to the jury was error entitling defendant to a new trial if the jury used the cord to experiment with the adding machines. *Id.* at 159.

The present case is fundamentally different from *Beach* because of the circumstances and subject matter involved. In the case at bar, the only object considered was the tractor submitted for examination before open court. No other device was employed to test the tractor. Two of the jurors merely mounted the tractor and depressed its pedals in order to inspect it more closely. Such closer examinations are not prohibited. In fact, *Beach* expressly allows closer inspections of exhibits on the part of the jurors even outside the presence of the court or counsel. *Beach* provides that "the mere making of a more critical examination of an exhibit than was made during trial is not objectionable." *Id.* at 159.[19]

The Tenth Circuit has also addressed the issue of closer examination of evidence by jurors. *Taylor v. Reo Motors, Inc.*, 275 F.2d 699 (10th Cir.1960), involved consolidated actions for wrongful death and property damage against the manufacturer of a motorfreight tractor for alleged manufacturing defects in the heat exchange mechanism of the fuel system. During trial the heat exchange mechanism was introduced into evidence and was dismantled and reassembled by expert witnesses. The jury was permitted to take the mechanism to the jury room during its deliberations. In the course of its deliberations, the jury dismantled and reassembled the heat exchanger with pocket knives and other tools belonging to the jury. The Tenth Circuit held that the jurors' actions were proper for the purpose of testing the validity of statements made in open court. *Id.* at 705–706.

Although it is not binding, this court finds much of the Tenth Circuit's reasoning persuasive. While not necessarily willing to condone the unsupervised dismantling and reassembling of mechanical objects by jurors, the court agrees with *Taylor*'s holding that it is within the court's discretion to allow jurors to examine more closely evidence that has been the subject of relevant testimony. As noted, in the present case the jurors heard and saw substantial testimony concerning the location of the pedals. This was a major point of contention bearing on the issue of liability. The fact that jurors sat in the tractor and depressed the pedals does not constitute "extraneous evidence," as Case claims. On the contrary, the jurors' actions constituted a more critical examination of the evidence. Consequently, the court finds that Case is not entitled to a new trial based upon the actions of the two jurors.

## VII. Remittitur

Case argues that the jury's award of $3.8 million is so excessive as to warrant a new trial or a remittitur of a portion of the award. Under Virginia law, a court has several options if it concludes that a monetary award is excessive. If "the evidence does not preponderate in favor of either party and the damage award is so large that it appears to be solely the product of sympathy," the court may order a new trial on all issues. *Bartholomew*, 224 Va. at 434, 297 S.E.2d at 682. If the monetary award is "out of proportion to the injuries suffered," but not so large that the jury's verdict as to liability is impeached, the court may put the plaintiff to the choice of accepting a remittitur or facing a new trial, Va.Code § 8.01–383.1, or may grant the defendant a new trial limited to the issue of damages, Va.Code § 8.01–383. *Bartholomew*, 224 Va. at 434, 297 S.E.2d at 682. The trial court has broad discretion to determine whether an award is excessive and what steps to take if it concludes that it is. *Id.* The Virginia Supreme Court has stated the duty of a trial judge thus:

the court, is not reversible error where such action involves merely a more critical examination of an exhibit." *Id.*

---

**19.** *Beach* further provides by way of example that "the use of a magnifying glass not introduced in evidence, without the knowledge and consent of the parties and without permission of

While a trial judge may not arbitrarily substitute his opinion for that of the jury, he has both the power and the duty to correct a verdict which he finds so excessive as to shock the conscience of the court or to compel the conclusion that the verdict was the product of passion or prejudice or some misunderstanding of the facts or the law.

*Hogan v. Carter & Grinstead,* 226 Va. 361, 372, 310 S.E.2d 666, 672 (1983). The court is of the opinion that the damages awarded were excessive. Because it grants judgment as a matter of law to Case, it is unnecessary to address this issue now.[20] Should the court's judgment in favor of Case be reversed, however, the court will on remand decide whether to grant a new trial on all issues, grant a new trial on the issue of damages only, or put the plaintiff to the choice of accepting a remittitur or facing a new trial. This decision is presently unnecessary considering the other holdings of the court. Should the issue recur, the court will further elaborate on its decision that the verdict is excessive and will hear additional argument of counsel on these issues.

### CONCLUSION

For the reasons stated, the court grants defendant Case's motion for judgment as a matter of law. An appropriate order shall be entered this day.

### ORDER

For reasons stated in a memorandum opinion entered this day, it is ADJUDGED AND ORDERED as follows:

Defendant's motion for judgment as a matter of law is GRANTED. This case shall be stricken from the docket.

---

**20.** It would be difficult to analyze the issue of damages properly now, since the relevant portions of the trial testimony have not yet been transcribed.