# Richmond

## George W. Blythe v. Camp Manufacturing Company.

January 15, 1945.

Record No. 2842.

Present, All the Justices.

The opinion states the case.

*Thomas L. Woodward, Crumpler & Crumpler* and *James G. Martin & Son,* for the plaintiff in error.

*Aubrey R. Bowles, Jr.,* and *John C. Parker, Jr.,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

George W. Blythe alleged in the first count of his notice of motion, filed in the Circuit Court of Isle of Wight county, against Norfolk Coca-Cola Bottling Works, Inc., Camp Manufacturing Company and Chesapeake Camp Corporation, that he purchased from the Camp Manufacturing Company and the Chesapeake Camp Corporation, as retail merchants, a bottle of Coca-Cola, manufactured by the Norfolk Coca-Cola Bottling Works, which contained soldering fluid or acid and other harmful and deleterious substances unfit for human consumption; that, believing the bottle to contain a beverage known as Coca-Cola, as represented, and fit for human consumption, he drank it; and that, as a result thereof, his throat, food passage, stomach and digestive organs were burned and permanently injured to the extent of $50,000. The second count alleged the same facts but the ground for recovery was based upon negligence in allowing the foreign substance to be bottled and sold as a beverage.

The trial court sustained the separate demurrers filed by defendants on the ground that plaintiff had combined in one declaration a count based on contract and a count based on tort, but gave plaintiff leave to amend his pleadings. Plaintiff amended his notice of motion by striking out the count based on tort and elected to go on trial on his action for breach of implied warranty.

While this action was pending in the Circuit Court of Isle of Wight county, plaintiff instituted another separate tort action for the same damage in the Circuit Court of the

city of Norfolk against the Norfolk Coca-Cola Bottling Works. On February 25, 1943, final judgment was entered on the verdict returned by the jury for defendant in this action.

The Norfolk Coca-Cola Bottling Works thereafter filed in this action a demurrer to the amended notice of motion, a special plea of *res adjudicata* and a special plea of estoppel by judgment, based upon the final judgment of the Circuit Court of the city of Norfolk. The grounds of the demurrer to the amended notice of motion were that it contained no allegation that the implied warranty of the sealed bottle followed the bottle into the possession of plaintiff, and no allegation of privity between plaintiff and this defendant. The trial court sustained the demurrer and the special pleas and dismissed the action as to the Norfolk Coca-Cola Bottling Works, Inc.

The other defendants filed separate demurrers and motions to abate and dismiss the action as to them, on the same grounds set forth in the demurrer and special pleas filed by the Norfolk Coca-Cola Bottling Works. After the argument on the pleas, but before the court pronounced judgment, plaintiff asked leave to file a second amended notice of motion, which eliminated the word "sealed" from the description of the bottle. The court permitted this amendment and overruled defendants' demurrers, pleas and motions to dismiss.

The Chesapeake Camp Corporation filed an affidavit signed by its president stating that it did not own, operate or control the commissary or storehouse described in the notice of motion. Thereupon the action was dismissed as to it.

As a result of these rulings, the only issue raised between the plaintiff and the Camp Manufacturing Company, the sole remaining defendant, was whether the Camp Manufacturing Company was liable to plaintiff for a breach of implied warranty. On this issue the jury returned a verdict for defendant, on which the trial court entered judgment. From that judgment this writ of error was awarded.

The petition for the writ contains only two assignments of error. One is based on the refusal of the trial court to set aside the verdict on the ground that it is not supported by the evidence. The other assignment is based on the action of the court in giving defendant's instruction "HD" over the objection of plaintiff.

The theory of the plaintiff, adopted by the court over the objection of defendant and incorporated in instruction "1P"*, was that the burden was upon plaintiff to prove by a preponderance of the evidence that he, through an agent, purchased from defendant a bottle labeled Coca-Cola; that the bottle contained an injurious fluid unfit for human consumption; that he drank a portion of the fluid from the bottle; and that it caused him serious bodily injury.

Plaintiff contends that he has borne this burden, and that the uncontradicted evidence conclusively establishes the following facts: On July 26, 1941, plaintiff, as a millwright, and R. C. Palen, his helper, were employed by the Chesapeake Camp Corporation in Franklin, Virginia. Blythe gave Palen a dollar and told him to buy Coca-Colas for them. Palen went about one-quarter of a mile from the machine shop, where they were working, to the commissary of the Camp Manufacturing Company and bought two bottles of Coca-Cola and a package of cigarettes. He drank one bottle, returned to the shop and gave the other bottle to Blythe, who opened it and drank a small portion of the fluid. Blythe immediately became very sick, fell down and began to vomit and spit blood. He was taken to Dr. Rawles' office in Franklin, and Dr. Rawles gave him a dose of anti-acid. He was then taken to Raiford Hospital in Franklin, where he continued to vomit profusely. He remained in this hospital for ten days, when he returned to his home. He

---

*"The court instructs the jury that if they believe from the evidence that the defendant sold to the plaintiff, through Richard C. Palen, a drink represented by the defendant as Coca-Cola, and that the plaintiff drank the same, or a portion thereof and that it contained an injurious drink, and thereby the plaintiff was injured, then it is the duty of the jury to find for the plaintiff."

went back to the Raiford Hospital, consulted other doctors and was operated on at Stuart Circle Hospital in Richmond. Drinking this fluid caused plaintiff to spend more than $1,500 in hospital and medical bills, lessened his earning capacity and permanently impaired his health.

The evidence is uncontradicted in the sense that defendant introduced no eyewitnesses to contradict the evidence for plaintiff on many vital issues, and, if the jury had accepted plaintiff's version of the evidence, the finding on this issue of fact would have been binding on the court. However, plaintiff and his witness, Palen, contradicted themselves to such an extent that plaintiff's interpretation of the evidence is not conclusive.

We held, in *Colonna* v. *Rosedale Dairy Co.*, 166 Va. 314, 186 S. E. 94, that, when a retail dealer sells food (not in sealed packages) for immediate use, there is an implied warranty that it is fit for human consumption; but that, in such a case, this warranty imposes no liability on a seller to a third person who is not a party to the sale. "In such a case there is no privity of contract between the seller and such third person, and this precludes any right on his part to any advantage or benefit to be derived from the warranty. 24 R. C. L., p. 158; Williston on Contracts, vol. 2, sec. 998." See *Kroger Gro., etc., Co.* v. *Dunn*, 181 Va. 390, 25 S. E. (2d) 254.

The burden, therefore, was upon the plaintiff to establish, by a preponderance of the evidence, that he either bought the bottle of Coca-Cola from defendant or it was bought through his agent for his own use. The testimony on this point is not conclusive. Palen testified that he went to the Camp Manufacturing Company commissary to purchase the Coca-Cola. In answer to the question, "How did you happen to go and get it?" he said: "We were working that morning and we finished our job. The mill was down for repair, and it is customary in the morning when work was more or less caught up to go to the store, the helpers or somebody in the crowd, to go to the store and get something

to eat or drink, and I went over there this morning and got a Coca-Cola for myself and some cigarettes and came back.

"Q. Who gave you the money, if anybody, with which to buy the Coca-Colas?

"A. Sir, I don't remember that.

"Q. You don't remember who gave you the money?

"A. Not exactly. I swear I don't."

'It is clear from the evidence that it was the custom for employees to obtain refreshments surreptitiously during working hours. Sometimes one employee and sometimes another would purchase drinks for the crowd. Plaintiff and Palen contradicted themselves and each other. Frequently plaintiff's answers to vital questions were evasive. Both of these witnesses, in other parts of their testimony, stated exactly where they were when plaintiff gave Palen the money to buy the drinks. Palen testified that he could not remember whether he paid cash for the drinks or whether he had the amount charged to his account at the commissary. Sometimes, when he was sent to the commissary for drinks, he would charge the amount to his account and keep the cash. Other times he paid cash out of the money given him to buy the drinks. At this stage of his testimony he not only remembered that Blythe gave him the money but he remembered in detail when and where he gave Blythe the 90 cents change. Which of these conflicting statements is true—the one in which he said, "I don't remember (who gave him the money to buy the drinks). * * * Not exactly. I swear I don't," or the one in which he said that Blythe gave him the dollar to buy the drinks and he gave Blythe 90 cents change at the hospital? This witness offered no explanation of his inability to remember who gave him the money to make the purchase in the one instance, and his ability to remember the details of the transaction in another instance. The jury observed these witnesses on the stand, their manner of testifying, their apparent candor and fairness, and, by their verdict, have determined that the plaintiff failed to carry the burden of establishing the fact that Palen was acting as his agent in purchasing the bottle of Coca-Cola.

The trial court approved this finding of the jury. The evidence on this issue is not so clear and conclusive that this court can say, as a matter of law, that both the jury and the trial court committed reversible error in this regard.

Plaintiff contends that the evidence shows conclusively that drinking the liquid from the bottle was the direct cause of his attack, his confinement in various hospitals, his operation, all his pain and suffering and the permanent impairment of his health.

Palen testified that, after plaintiff took one swallow, the liquid remaining in the bottle was "still up in the neck." This one swallow caused plaintiff to stagger "back up in the machine shop and drop flat of his back." On the way to the doctor's office, plaintiff was spitting blood and vomiting "red stuff." Plaintiff testified that he opened the bottle and "drank some," and that "it made me sick, strangled me and eventually passed me out." He was asked: "What kind of a feeling did it give you when you drank it?" He replied: "Well, I don't hardly know. It kind of numbed me, made me nauseated and I just passed away with it."

Dr. Rawles testified that, on July 26, 1941, plaintiff was brought to his office and he "understood his mouth and stomach were burned." The doctor did not examine plaintiff but gave him a dose of anti-acid and went in the back room to get "something else." When he returned to the front office, the two men who were with plaintiff had carried him to the Raiford Hospital in Franklin, Virginia. Nurses in the hospital testified that plaintiff continued to vomit, at times spitting up "something like the peeling of his stomach; looked like potato gratings. It was something like that."

Plaintiff remained in the hospital 10 days. Later he returned to this same hospital for 24 days. He was treated by Dr. Martin and went back to the Raiford Hospital for 62 days, after which he spent more than 30 days in Stuart Circle Hospital in Richmond.

Dr. T. Neill Barnett, of Richmond, testified that he made a thorough examination of plaintiff in November, 1941, and, with the aid of X-rays, reached the conclusion that plaintiff

had an ulcer of the stomach which prevented from 50 to 60 per cent of his food from passing into his intestines. Another X-ray was made in February, 1942, which showed that retention of his food had been reduced to 25 to 30 per cent. In March, 1942, Dr. Brinkley, of Richmond, in the presence of Dr. Barnett, performed an operation on plaintiff. In the course of this operation it was revealed that plaintiff had no ulcers or cancer but that he was suffering from adhesions of the gall bladder and colon, a chronic adherent appendix and a thickening or enlargement of the pyloric sphincter, the outlet from the stomach to the intestines. The doctors found no evidence of scars or ulcers, and no evidence of any caustic burning or other injury to the mucous membranes. They stated that in their opinion plaintiff was suffering from a disease of long standing.

In July, 1942, another X-ray was taken which showed that there was a normal passage of food from the stomach into the intestines; in other words, the operation was very successful.

As stated, plaintiff and his helper said that the one swallow of liquid from the bottle was so injurious that it made plaintiff "numb", knocked him down and rendered him unconscious. Numerous doctors examined him. None stated that the membranes of his mouth, throat, esophagus or stomach showed any scars or other indication of injury from swallowing a deleterious substance. The contents of the bottle were analyzed but plaintiff, for reasons best known to himself, refrained from introducing this analysis. Plaintiff introduced no direct evidence tending to show that the bottle contained any liquid or substance other than Coca-Cola. The jury were left to guess the nature of the fluid which plaintiff claims produced such an instantaneous and violent effect upon him; in other words, the jury were asked to determine the cause from the effect.

Plaintiff did not call Dr. Brinkley, the surgeon who performed the operation, as a witness, though the record shows that the doctor was available. His deposition, taken by defendant, was rejected on plaintiff's objection. The surgeon

had a better opportunity to know the cause of the malady from which plaintiff was suffering than any other person. Dr. Barnett, who was present at the operation, stated that he agreed with the conclusion reached by Dr. Brinkley, but plaintiff prevented Brinkley's report from being read to the jury.

The issues of fact before the jury were: (1) Did the bottle contain a deleterious substance? (2) If so, did one swallow of this liquid produce upon plaintiff the instantaneous effect claimed by him? (3) Was his physical condition caused by drinking from the bottle or was his physical condition attributable to a disease of long standing?

On all these issues the jury found against plaintiff. This finding simply means that in the opinion of the jury the plaintiff failed to prove his case by a preponderance of the evidence. The trial court approved this finding. The evidence for plaintiff is not sufficiently clear or conclusive to justify this court in disturbing the verdict and judgment.

The second assignment of error is to the action of the trial court in giving, over plaintiff's objection, defendant's instruction "HD". The instruction, with the objectionable language in italics, is as follows: "The court instructs you that the burden of proof resting on the plaintiff in this case includes not only the burden of establishing the defendant's liability to him *but also the burden to establish by the preponderance of evidence the nature, extent and duration of any injury he may claim. The plaintiff must show by such preponderance of evidence that each specific complaint or ailment claimed by him as an element of damage was a direct result of the circumstance on which he relies for a recovery.* It is not sufficient for him to show that any such particular complaint or ailment may or may not, with equal probability, have resulted from such circumstances or from natural or other causes. The court therefore tells you that, even if you find for the plaintiff, in assessing his damages, you must not consider any element of damage or expense except those which you believe from a preponderance of the evidence were directly caused by the liquid taken into his

mouth from the Coca-Cola bòttle on the occasion in question."

The uncontradicted testimony clearly established the fact that plaintiff was very sick from July 26, 1941, to the spring of 1942, and that during this interval he continued to suffer, in part at least, from a disease of long standing. Defendant was not liable to plaintiff unless the alleged breach of warranty was the direct or contributing cause of one or more of plaintiff's ailments. The doctors described in some detail the condition of the plaintiff's. appendix, stomach and intestines, but none stated that the condition of these parts of plaintiff's anatomy was caused directly or indirectly by the fluid alleged to have been drunk from the bottle of Coca-Cola. The language in the instruction, to which plaintiff objects, when applied to the specific evidence on damages in this case, is not erroneous. This instruction, when read, as it must be, with plaintiff's instruction on damages, was not calculated to either mislead or confuse the jury.

The decision of this case is based on the plaintiff's theory of the law, namely; that a retail dealer impliedly warrants beverages sold by him in bottles bearing the original seal of a reputable manufacturer to be wholesome and fit for human consumption. Defendant contested the application of this principle at every stage of the trial, but, inasmuch as it won its case on the plaintiff's theory, it filed no cross error and elected to rest its defense in this court on plaintiff's theory.

Under these circumstances, it is unnecessary to decide, and hence the court reserves for future determination, the question of whether a retailer, who sells unwholesome food or beverages for human consumption, is liable to the purchaser for the consequences on an implied warranty when such food or beverages are resold in the original sealed containers bearing the label of a reputable manufacturer. For a few of the authorities holding divergent views, see 5 A. L. R. 248; 13 A. L. R. 1176; 74 A. L. R. 344; 90 A. L. R. 1269; 142·A. L. R. 1434; and 22 Am. Jur. 882.

The judgment is affirmed.

*Affirmed.*