Present: Carrico, C.J., Compton, Stephenson, Whiting,[1] Lacy, Hassell, and Keenan, JJ.

DARRELL WOOD

v.  Record No. 942033          OPINION BY JUSTICE LEROY R. HASSELL
                                      September 15, 1995
BASS PRO SHOPS, INC.

FROM THE CIRCUIT COURT OF HENRY COUNTY
David V. Williams, Judge


In this appeal of a judgment for the defendant in a product liability action, we consider whether assumption of the risk is a defense to a claim of breach of an implied warranty, and we decide issues relating to the admission of certain evidence.

I.

PROCEEDINGS

Darrell A. Wood filed a motion for judgment against Bass Pro Shops, Inc. alleging, among other things, negligence and breach of express and implied warranties.  Wood alleged that he suffered severe personal injuries, including partial paralysis, when he fell from a hunter's tree stand purchased from the defendant.

Wood nonsuited his negligence and express warranty claims, and the case proceeded to trial on his breach of implied warranty claim.  The jury returned a verdict in favor of the defendant. We awarded Wood an appeal and agreed to consider the defendant's assignments of cross-error.

II.

FACTS

In accordance with well-settled principles, we will review the facts and all reasonable inferences they raise in the light

---

[1]Justice Whiting participated in the hearing and decision of this case prior to the effective date of his retirement on August 12, 1995.

most favorable to the defendant, who comes to this Court with a favorable jury verdict, confirmed by the trial judge.

Wood purchased a tree stand after he had seen an advertisement in the defendant's mail-order catalog. The tree stand was designed by Amacker International, Inc., and manufactured by Tree Stand Manufacturing Company. The tree stand was packaged, placed in a box, and shipped to Wood. Wood testified that when he opened the box, neither instructions nor a safety belt accompanied the tree stand. The box manufacturer's representative testified that the following instructions were printed on the side of the box: "Always use a safety belt when using a tree stand." The representative also stated that a safety belt and additional instructions were routinely placed in the same box along with each tree stand and shipped to a customer.

The safety belt is designed to prevent the hunter from falling. One portion of the belt is attached to the hunter's body, and the other portion of the belt is secured to the tree. Wood did not contact the defendant to obtain a safety belt or instructions.

The tree stand, which Wood used when hunting, may be affixed to a tree by wrapping a strap around the tree. The tree stand permits a hunter to position himself at elevations above a deer's line of sight or range of scent. The hunter may either stand on a mesh platform on the tree stand's lower framework or sit on a small seat on the higher portion of the stand.

On November 20, 1991, Wood and his friend, Hardin Daniel Morrison, went on a deer hunt. Wood had previously suffered an

ankle fracture and was wearing a short-leg cast on his left ankle. Wood climbed about 26 feet up a tree without using a safety belt and affixed the tree stand to the tree. He took his safety belt, which he had acquired from another manufacturer about a year before he purchased the tree stand, out of his pocket and put it on.

After a couple of hours, Wood decided to end his hunt. He removed his safety belt and placed it in his pocket. He moved the seat of the tree stand and prepared to descend. Then, "something broke [and] Wood fell over twenty feet to the ground." Wood suffered a spinal injury that paralyzed him below the waist.

Wood presented evidence at trial that the tree stand collapsed because the stand was defectively designed and manufactured. The defendant presented evidence that the tree stand was not defective and that Wood's injuries were caused because, _inter alia_, he had failed to wear a safety belt when preparing to descend from the tree stand.

### III.

### ASSUMPTION OF THE RISK

The trial court, over Wood's objection, instructed the jury that Wood could not recover on his breach of implied warranty claim if the jury found that he had assumed the risk of injury. Wood contends that assumption of the risk is not a defense to a breach of implied warranty claim. The defendant argues the trial court properly instructed the jury that assumption of the risk is a defense that may be asserted in a breach of implied warranty action.

We have not heretofore considered whether the doctrine of assumption of the risk is a defense to an action for breach of implied warranty.  See White Consolidated Industry v. Swiney, 237 Va. 23, 29-30, 376 S.E.2d 283, 286 (1989).  However, in Brockett v. Harrell Brothers, Inc., 206 Va. 457, 462-63, 143 S.E.2d 897, 902 (1965), we considered whether contributory negligence is a defense in an action of implied warranty of fitness.  There, we stated:

> There is a conflict of authority as to whether contributory negligence is a proper defense in an action for breach of implied warranty of fitness.  The majority view is that since the action is ex contractu, contributory negligence as a defense has no place therein.  Other courts take the view that since such an action has its origin in tort, contributory negligence is a proper defense. . . .
>
> We adopt the majority view since that is more in accord with our concept of the nature of the action.  In actions for damages for the sale of unwholesome foodstuffs we have recognized the distinction between those based on negligence and those based on breach of implied warranty of fitness.  The latter we have consistently regarded as action ex contractu. Kroger Grocery & Baking Co. v. Dunn, 181 Va. 390, 392, 25 S.E.2d 254, 255; Blythe v. Camp Manufacturing Co., 183 Va. 432, 434, 32 S.E.2d 659, 660; Swift & Company v. Wells, supra, 201 Va. at 217, 110 S.E.2d at 206.  Consequently, we hold that the contributory negligence of the plaintiff will not be material on the issue of the defendants' breach of implied warranty of fitness.

We are of opinion that the rationale we invoked in Brockett is applicable here.  Wood's action for breach of implied warranty, just as the plaintiff's action in Brockett, is ex contractu.  Even though the tort defenses of contributory negligence and assumption of the risk are different and distinguishable defenses, we have described these defenses as "associated defenses," Amusement Slides v. Lehmann, 217 Va. 815, 818, 232 S.E.2d 803, 805 (1977), and we have said that "these

defenses often overlap," Budzinski v. Harris, 213 Va. 107, 109, 189 S.E.2d 372, 375 (1972). We perceive no persuasive reason to treat these tort defenses differently. Thus, we hold that the tort or ex delicto defense of assumption of the risk is not applicable in an action for breach of an implied warranty.

Nevertheless, a defendant in a product liability case has other available defenses. As we have repeatedly stated, "there can be no recovery against the manufacturer for breach of . . . implied warranties when there has been an unforeseen misuse of the article supplied." Featherall v. Firestone, 219 Va. 949, 964, 252 S.E.2d 358, 367 (1979); White Consolidated Industry, 237 Va. at 29, 376 S.E.2d at 286. We also emphasize, as we noted in Brockett, that a plaintiff may not recover damages for breach of an implied warranty if the purported defect of which the plaintiff complains was "known, visible or obvious" to him. Brockett, 206 Va. at 463, 143 S.E.2d at 902. The trial court erred, however, in submitting the issue of assumption of the risk to the jury.

IV.

ADMISSIBILITY OF MANUFACTURERS' INSTRUCTIONS AND WARNINGS

The trial court, over Wood's objections, permitted the defendant to introduce in evidence a box imprinted with certain instructions, and copies of other instructions and warnings that were manufactured by a tree stand manufacturer, A.P.I. Outdoors, Inc. The trial court also permitted the defendant to introduce in evidence pages from catalogs of retailers of tree stands, even though those retailers are not parties to this action. Wood alleges that the trial court erred by admitting this evidence

because the defendant failed to prove that he had read the warnings and instructions.  Further, Wood says, "[t]here would be no basis for admitting these Exhibits in evidence because the A.P.I. instructions and warnings said nothing about the dangerous hidden . . . defect in the structure of the 'Tree Stand,' and thus did not warn him of it."[2]

The defendant argues, and we agree, that the exhibits are admissible because they are relevant to the issue whether Wood misused the tree stand by failing to wear his safety belt when descending from the tree.  Wood admitted that he received information and warnings concerning the use of a safety belt manufactured by A.P.I. Outdoors, Inc.  Wood also testified that in 1988, before his accident, he ordered tree stands from two companies, Cabela's, Inc. and Gander Mountain, Inc.

Cabela's catalog contained the following warning displayed beside a picture of a tree stand that Wood had purchased:
> **Cabela's strongly recommends that you always use a safety belt when using any tree stand.**

Gander Mountain's catalog also contained a prominent warning stating:
> **The Manufacturer and Gander Mountain strongly recommend using a safety belt with all tree stands.**

Gander Mountain's catalog also contained a photograph of a hunter standing on a tree stand using a safety belt.

We hold that the trial court properly admitted these

---

[2]We find no merit in Wood's argument that these exhibits constitute "unverified hearsay."  These exhibits were offered to show notice to or knowledge held by Wood, and not for the truth of the matter asserted therein.  See State Farm Fire and Casualty Co. v. Scott, 236 Va. 116, 122, 372 S.E.2d 383, 386 (1988).

exhibits because they support the defendant's contention that even though Wood knew it was dangerous to use a tree stand without wearing a safety belt, he purportedly misused the tree stand by failing to wear a safety belt when descending from the tree. Additionally, the jury might have inferred that Wood had read some of the warnings because the warnings in the catalogs were prominently displayed on pages containing pictures of items that Wood had purchased.

## V.

## ADMISSIBILITY OF MEDICAL TESTIMONY

Wood asserts that the trial court erred by admitting in evidence certain portions of the de bene esse deposition of Dr. Carey Charles Mayer, a psychiatrist. Mayer testified that he had treated Wood for depression and sleeplessness before Wood was injured on November 20, 1991. Mayer also testified that Wood had suicidal thoughts before November 20, 1991.

The defendant argues that Mayer's testimony is admissible because Wood "claims that he has incurred physical and mental suffering as a result of Bass Pro's alleged breaches [and thus he] place[d] his entire medical condition into issue." We agree with the defendant.

We have held that "[e]very fact, however remote or insignificant, that tends to establish the probability or improbability of a fact in issue, is relevant, and if otherwise admissible, should be admitted." Ravenwood Towers, Inc. v. Woodyard, 244 Va. 51, 56, 419 S.E.2d 627, 630 (1992) (quoting Harrell v. Woodson, 233 Va. 117, 122, 353 S.E.2d 770, 773 (1987)). Additionally, the determination of relevancy involves

the exercise of the trial court's discretion.  Owens-Corning Fiberglas Corp. v. Watson, 243 Va. 128, 138, 413 S.E.2d 630, 636 (1992).  Here, Wood placed his medical condition at issue and, among other things, he sought, as an element of damages, compensation for mental anguish that he claimed was caused as a result of the defendant's alleged breach of implied warranty. The defendant was entitled to present relevant evidence that Wood's mental anguish was caused by a factor for which the defendant was not responsible.  Therefore, we hold the trial court did not abuse its discretion in admitting this evidence.

VI.

ADMISSIBILITY OF EXPERT TESTIMONY

A.

The defendant assigns cross-error to the admission of certain expert testimony.  In the first instance, the trial court permitted Lynwood Eugene Merricks to testify as an expert witness on the subjects of metal fabrication, tree stand designs, the use of tree stands, and common practices utilized in hunting white tail deer.  The defendant argues that the trial court erred by permitting Merricks to qualify as an expert witness on these subjects.  We disagree.

In Grubb v. Hocker, 229 Va. 172, 326 S.E.2d 698 (1985), we stated:

> Whether a witness is qualified to express an opinion as an expert is a question largely within the sound discretion of the trial court. . . .  A decision to exclude a proffered expert opinion will be reversed on appeal only when it appears clearly that the witness was qualified. . . .  And the expressed belief of a witness that he is an expert does not ipso facto require his qualification. . . .  The facts must show that he possesses sufficient knowledge, skill or experience to make him competent to testify as an expert on the subject matter of the inquiry.

Id. at 176, 326 S.E.2d at 700 (quoting Noll v. Rahal, 219 Va. 795, 800, 250 S.E.2d 741, 744 (1979)); Griffett v. Ryan, 247 Va. 465, 469, 443 S.E.2d 149, 152 (1994). We have also held that "the knowledge necessary to qualify a witness to testify as an expert might be derived from study alone, or experience, or both." Grubb, 229 Va. at 176, 326 S.E.2d at 700-01; Griffett, 247 Va. at 469, 443 S.E.2d at 152.

The evidence shows that Merricks had 3,500 hours of vocational education and training in mechanics, machine design, and fabrication. He made hunting and trapping equipment for Southern Outdoor Supplies, a sporting goods retailer. He had made approximately 30 to 40 different types of deer hunting stands, and he has designed tree stands. Merricks has experience with the use of safety belts and safety harnesses. He also has extensive experience hunting deer. Thus, we hold that the trial court did not abuse its discretion by permitting Merricks to testify as an expert witness.

B.

In a second assignment of cross-error, the defendant argues that the trial court erred by refusing to permit it to conduct a demonstration in the presence of the jury. The trial court refused to permit this demonstration because Wood objected on the basis that the demonstration was a test and, as such, the demonstration would not be permissible because it did not duplicate the accident conditions. We do not consider the defendant's argument because the record does not contain a proffer of the proposed demonstration. City of Manassas v. Board of County Supervisors of Prince William County, 250 Va. 126, 137,

458 S.E.2d 568, 573 (1995); <u>Brown</u> v. <u>Commonwealth</u>, 246 Va. 460, 465, 437 S.E.2d 563, 565 (1993); <u>Blue Cross</u> v. <u>Commonwealth</u>, 221 Va. 349, 357, 269 S.E.2d 827, 832 (1980).

VII.

Accordingly, we will reverse the judgment of the trial court and remand this case for a new trial consistent with this opinion.

<u>Reversed and remanded</u>.