Present:  All the Justices

MORGEN INDUSTRIES, INC.

v.  Record No. 951619     OPINION BY JUSTICE BARBARA MILANO KEENAN
                                     June 7, 1996
DELORES VAUGHAN

            FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                    Dennis F. McMurran, Judge

     In this appeal of a judgment entered in a products liability

action, we consider whether there is sufficient evidence to

support the jury's verdict.

     We review the evidence in the light most favorable to the

plaintiff, the prevailing party below.  Besser Co. v. Hansen, 243

Va. 267, 269, 415 S.E.2d 138, 139 (1992).  Delores Marie Vaughan

was injured on the job when her leg was trapped by the

undercarriage wheel of a concrete conveyor unit manufactured by

Morgen Industries, Inc. (Morgen).  Adams-Dewind Machinery Company

(Adams), a dealer of various construction machinery products,

sold the conveyor unit to Vaughan's employer, Misener Marine

Construction (Misener).

     Misener had contracted to build a portion of the Monitor

Merrimac Bridge Tunnel on Interstate Route 664 between Newport

News and Suffolk.  Misener purchased from Adams eleven Morgen

conveyor units to transport wet concrete to the bridge spans from

the site where the concrete was mixed.  Four conveyor units were

85 feet long; the other seven conveyor units were 40 feet in

length.  Each conveyor unit included a rectangular-shaped bin

mounted on a wheeled undercarriage.  Each undercarriage was

comprised of four wheels with steel flanges designed to keep the

undercarriage on a tubular steel track.

Misener attached the 85-foot conveyor units together, placing them in line with the 40-foot conveyor units. The conveyor unit closest to the pour site was attached to a Morgen side discharge unit, from which the concrete was poured. Morgen equipped the side discharge unit with a four-cylinder, 30 horsepower engine, which enabled the unit to move back and forth as the concrete was being poured. Misener removed that engine and replaced it with a more powerful, six-cylinder Ford engine, which was capable of operating all the conveyor units at one time.

In addition to altering the power source of the side discharge unit, Misener used a truck, which was attached to the other end of the conveyor system with cables, to retract the conveyor units away from the pour site. The truck was needed to move the 85-foot conveyor units, which were too heavy to be moved manually.

A Morgen sales brochure stated that the conveyor units could be used in a "train" configuration to transport concrete over long distances. The brochure noted that such conveyor "trains" had been successfully used on several construction sites across the country.

Misener's employees regularly cleaned the conveyor system. The employees sprayed the system with water and then "chipped off" cement that had dried and become affixed to the conveyor

components.  Misener's employees regularly stood on the rails in order to clean certain parts of the conveyor system.  Misener did not warn its employees not to stand on the rails while cleaning the conveyor units.

On the day Vaughan was injured, the machines were scheduled to remain stationary for cleaning.  In a departure from the established routine, another employee activated the side discharge unit without warning, setting the undercarriage wheels of the conveyor units in motion.  Vaughan's foot was pinned between a moving wheel and the undercarriage rail.  Her foot was trapped in the "nip point" where the wheel and the rail met.  Vaughan was unable to move her foot and the wheel rolled over her foot, ankle, and leg.  While her foot was still pinned by the wheel, she fell off the rail, sustaining multiple fractures of both her tibia and her fibula.

Vaughan filed a motion for judgment against Morgen and Adams alleging, among other things, that the conveyor unit was unreasonably dangerous and unsafe for its intended use.  Vaughan later nonsuited her claims against Adams and the case proceeded to trial.

At trial, George W. Pearsall, a professor of mechanical engineering at Duke University, testified that the design of the conveyor unit was unreasonably dangerous and defective.  Among the defects he observed was the absence of wheel guards which would have prevented Vaughan's foot from being pinned between the

wheel and the rail.

Pearsall stated that, for approximately one hundred years, mechanical engineers have been aware that "nip points" create a hazard. The use of wheel guards eliminates this hazard, because the guards are designed to sweep all objects from the path of the wheels. Pearsall stated that such wheel guards were feasible for use in the Morgen conveyor undercarriages, and that Morgen's failure to install wheel guards on these undercarriages was the single most significant design defect that caused Vaughan's injury.

Pearsall testified that industry standards promulgated by the American National Standards Institute recommend the use of wheel guards to prevent injuries from occurring at "nip points." Pearsall also testified that "nip points" are not dangers that are obvious to most people. He stated that Morgen should have foreseen the need for wheel guards, since it is foreseeable that a worker would stand on the undercarriage rails to clean certain areas of the conveyor units.

Hal I. Dunham, a mechanical engineer specializing in design consulting, product testing, and accident investigation, also testified that the conveyor undercarriages were defectively designed. He based his opinion on Morgen's failure to include wheel guards to sweep objects away from the "nip points."

The trial court denied Morgen's motion to strike made at the conclusion of Vaughan's evidence. Morgen then presented evidence

that the conveyor units were not defective in design. William W. Stone, an engineer experienced in the design and building of conveyors and bucket elevators, testified that the Morgen conveyor units were not defective in design. He stated that guards were not required on the undercarriage wheels because the individual conveyor units were not motorized. Stone also stated that the "nip points" were an open and obvious hazard.

James N. Clark, an engineer with experience in industrial equipment safety and design, agreed that the "nip points" were an open and obvious hazard. Clark also testified that the conveyor units were not designed defectively, and that Vaughan's injury was caused by her act of standing on the rails, combined with the absence of adequate safety measures at the work site. Clark stated that the unexpected movement of the conveyor unit was caused by Misener's failure to adhere to standard work practices.

James M. Hart, Jr., a consultant who had served as a project manager in highway and bridge construction operations, acknowledged that it was foreseeable by Morgen that a purchaser would assemble a large number of conveyor units together in a "train" configuration. Hart stated that it was also foreseeable that this conveyor system would be joined with a motorized side discharge unit.

At the close of all the evidence, Morgen moved the trial court to strike the evidence, arguing, among other things, that there was no evidence of any defect in the design of the conveyor

units.  The trial court denied Morgen's motion.

The trial court also refused Morgen's request for certain jury instructions, and the case was submitted to the jury on both negligence and breach of implied warranty theories.  The jury returned a verdict for Vaughan in the amount of $850,000.

On appeal, Morgen first argues that the evidence established, as a matter of law, that its conveyor units were not unreasonably dangerous when manufactured and sold to Misener.  Morgen asserts that its conveyor units were unpowered and were separate pieces of equipment designed to be moved manually and individually.  Alternatively, Morgen contends that any alleged danger in the design of the conveyor units was open and obvious, thus relieving it of liability for Vaughan's injury.

In response, Vaughan argues that the evidence is sufficient to present a jury question on the issue whether the conveyor units were unreasonably dangerous for their intended or reasonably foreseeable use.  Vaughan further notes that there is evidence that the "nip points" were not an open and obvious hazard, and that the jury resolved this issue in her favor.  She also asserts that the evidence supports the jury's implicit finding that Misener's modifications to the conveyor system constituted a foreseeable use of the product, and that these modifications were not a proximate cause of her injury.  We agree with Vaughan.

In order to recover under either a negligence or a breach of

implied warranty theory for the manufacture of an unreasonably dangerous product, a plaintiff must show (1) that the goods were unreasonably dangerous either for the use to which they would ordinarily be put or for some other reasonably foreseeable purpose, and (2) that the unreasonably dangerous condition existed when the goods left the manufacturer's hands. Logan v. Montgomery Ward & Co., 216 Va. 425, 428, 219 S.E.2d 685, 687 (1975). A product is unreasonably dangerous if it is defective in assembly or manufacture, unreasonably dangerous in design, or unaccompanied by adequate warnings concerning its hazardous properties. See Austin v. Clark Equip. Co., 48 F.3d 833, 836 (4th Cir. 1995); Bly v. Otis Elevator Co., 713 F.2d 1040, 1043 (4th Cir. 1983). The issue whether a product is unreasonably dangerous is a question of fact. See Singleton v. International Harvester Co., 685 F.2d 112, 115 (4th Cir. 1981).

Here, there is sufficient evidence from which the jury could have found that Misener's use of the conveyor units was reasonably foreseeable. For example, Morgen's own advertising brochure stated that the conveyor units could be used successfully in a "train" configuration, and James Hart testified that it was foreseeable by Morgen that the conveyor units would be attached to a motorized side discharge unit.

The side discharge unit motor moved the undercarriage wheels on the day Vaughan was injured. Although there is evidence that the Ford motor used on the side discharge unit was a

"considerably larger power source" than the four-cylinder, 30 horsepower engine it replaced, Morgen did not present evidence that this additional engine power was causally related to Vaughan's injuries.

The unreasonably dangerous condition of the conveyor units was established by the testimony of Pearsall and Dunham. Both experts stated that the absence of wheel guards created an unreasonably dangerous product which existed when the conveyor units left Morgen's hands. Pearsall stated that this defective condition was the primary cause of Vaughan's injury. Further, since the evidence was in conflict on the issue whether the "nip points" were an open and obvious hazard, the jury was entitled to accept Pearsall's testimony that the hazard was not open and obvious and to consider the fact that the injury occurred when the machines were not scheduled for movement. See Whitting v. Doxey, 217 Va. 482, 484, 230 S.E.2d 251, 253 (1976); Batts v. Tow-Motor Forklift Co., 978 F.2d 1386, 1391 (5th Cir. 1992); Gracyalny v. Westinghouse Elec. Corp., 723 F.2d 1311, 1321-22 (7th Cir. 1983).

We find no merit in Morgen's argument that Misener's modifications to the system relieved Morgen of any liability for the defective design of the conveyor units. Morgen presented no testimony that any of Misener's modifications to the system, namely, using the Ford engine to provide power to the side discharge unit and to the other conveyor units, latching the 85-

foot conveyor units together, or using a truck to retract the conveyor units after the concrete was poured, were causally related to Vaughan's injury.

Morgen argues, nevertheless, that it is not liable for Vaughan's injuries, because Misener was a "sophisticated user" of construction equipment, which had knowledge of the unreasonably dangerous condition caused by the absence of wheel guards, as well as knowledge of the other design defects identified by Pearsall. Morgen's argument, however, is inapposite, because the issue of Misener's sophistication and knowledge as an industrial user of this equipment is relevant to the claim of failure to warn, not to the claim of manufacture of an unreasonably dangerous product. See Featherall v. Firestone Tire & Rubber Co., 219 Va. 949, 962, 252 S.E.2d 358, 366 (1979); Oman v. Johns-Manville Corp., 764 F.2d 224, 233 (4th Cir.), cert. denied, 474 U.S. 970 (1985). Thus, we do not consider Misener's so-called status as a "sophisticated user" in reviewing the sufficiency of the evidence of Vaughan's claims that Morgen manufactured an unreasonably dangerous product.

Morgen also argues that it is not liable for the injury arising from use of its product because Misener was aware of, but did not use, procedures which would have improved the product's safety, such as setting the brakes on the individual conveyor units to prevent movement during maintenance. Morgen also contends that Misener could have added wheel guards, provided

ladders for cleaning the machinery, and implemented various other safety measures.  However, the issues whether Misener misused the product and whether Misener's conduct constituted superseding negligence were matters submitted to the jury under the trial court's instructions.  Since there is evidence to support the jury's verdict, we conclude that the jury resolved these questions in Vaughan's favor.[1]

Morgen next argues that the trial court erred in refusing to grant certain jury instructions concerning its so-called "sophisticated user" defense, Misener's modification of the equipment as an allegedly knowledgeable purchaser, the absence of a duty to install warning devices, and a definition of the term "reason to know."  Vaughan replies that Morgen is procedurally barred from raising this issue, because the record does not show that Morgen presented to the trial court the same arguments it raises here.  We agree with Vaughan.

The purpose of Rule 5:25 is to give the trial court an opportunity to rule on a matter with knowledge of the substance of a party's objection, in order to avoid needless mistrials, reversals, and appeals.  See Marshall v. Goughnour, 221 Va. 265,

---

[1]Because we have determined that the evidence of Morgen's manufacture of an unreasonably dangerous product is sufficient to support the jury's verdict, we need not review the sufficiency of the evidence of Vaughan's separate claim of failure to warn.

269, 269 S.E.2d 801, 804 (1980).  Generally, the reasons for objecting to the grant or refusal of a jury instruction must be presented to the trial court before such objection will be considered on appeal.  See Ames & Webb, Inc. v. Commercial Laundry Co., 204 Va. 616, 623, 133 S.E.2d 547, 552 (1963).  The objection must be made in the trial court when the instruction is tendered.  Smith v. Commonwealth, 165 Va. 776, 781, 182 S.E. 124, 127 (1935).[2]

The record here shows that the trial court considered the jury instructions outside the court reporter's presence.  Since these proceedings are not part of the record before us, we are presented only with the instructions marked "refused" by the trial court, along with citations to various cases at the bottom of the refused instructions.

Morgen's citation to cases at the bottom of each instruction page does not satisfy the requirement that an objection be stated "with reasonable certainty at the time of the ruling."  Rule 5:25.  A case can often be cited for numerous propositions, and

---

[2]In the absence of a transcript or written statement, timely objection to a granted instruction may be shown and preserved when, in a refused instruction, the objecting party advances the contrary theory to one set forth in the granted instruction. Pilot Life Ins. Co. v. Karcher, 217 Va. 497, 498, 229 S.E.2d 884, 885 (1976).  This exception is inapplicable here, however, because the instructions at issue were refused by the trial court and the present record contains no statement providing the reasons for Morgen's objection to the trial court's refusal of the proposed jury instructions.

the trial court is not required to determine <u>sua sponte</u> what argument a party may be entitled to make under a given case. Since Morgen did not preserve the reasons for its objections on the record, we do not consider its arguments raised on appeal concerning the trial court's refusal of the proposed jury instructions.  Rule 5:25.

For these reasons, we will affirm the trial court's judgment.

<u>Affirmed.</u>

JUSTICE STEPHENSON, concurring in part, dissenting in part.

I agree with that portion of the majority opinion which holds that the evidence is sufficient to present a jury issue on liability.  I do not agree, however, that Morgen is procedurally barred from challenging on appeal the trial court's failure to grant a certain jury instruction tendered by Morgen.  With respect to that issue, I agree with Justice Compton's dissent. Consequently, I would reverse the judgment and remand the case for a new trial.

JUSTICE COMPTON, dissenting.

In my opinion, the danger resulting from the alleged defect in the design of the conveyor units, that is, failure to include wheel guards to sweep objects away from the "nip points," was a danger that was open and obvious to a lay person.  Indeed, the plaintiff testified, "When the machine was on or being moved, it was quite obvious it's very dangerous not to be -- well, you

would not want to be on the rail."  Examination of the exhibits, including the photographs, reveals there is nothing so mysterious about the patent condition that an expert's testimony can be used to create a question of fact; there is simply a wheel on a rail.  And, the fact that the unit may have been moved without warning is irrelevant to the question whether the condition was obviously dangerous.

Under these circumstances, when the dangerous condition "is obvious and patent to all," Brown v. General Motors Corp., 355 F.2d 814, 819 (4th Cir. 1966), cert. denied, 386 U.S. 1036 (1967), the manufacturer of the product is not liable for injury to the user.  Spangler v. Kranco, Inc., 481 F.2d 373, 375 (4th Cir. 1973).  I would so hold in this case.

Furthermore, I believe the defendant properly preserved for appeal its objection to the failure of the trial court to grant the proffered instruction dealing with Misener's modification of the equipment and its utilization in a configuration that it devised.

The record is clear that this instruction was tendered to the trial court and marked "refused."  Code § 8.01-384(A) provides that an objection is sufficient to preserve the issue for appeal if "a party, at the time the ruling . . . of the court is made or sought, makes known to the court the action which he desires the court to take . . . and his grounds therefor."  Here, tender of the instruction certainly informed the trial court that

the instruction was a correct statement of the law and applied to the facts of this case. Nothing more is required after the instruction was refused to save the point for appeal. And, the majority's attempt to distinguish this Court's holding on the issue in Pilot Life Insurance Co. v. Karcher, 217 Va. 497, 498, 229 S.E.2d 884, 885 (1976), is a distinction that makes no difference.

The evidence clearly established that Misener designed, assembled, and motorized this conveyor system of inordinate length, using parts from different manufacturers and its own inventory, and modified the conveyors received from the defendant. The jury should have been permitted to consider this aspect of defendant's case, and I would hold the trial court erred in refusing the instruction.

Consequently, I cannot join an opinion affirming the judgment below.