**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DANIEL FREEMAN,
Plaintiff-Appellant,

and

MARY FREEMAN,
Plaintiff,

v.                                          No. 96-1626

CASE CORPORATION, a/k/a J.I. Case
Company, A Tenneco Corporation;
CASE INTERNATIONAL,
Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Virginia, at Abingdon.
Glen M. Williams, Senior District Judge.
(CA-94-63-A)

Argued: May 6, 1997

Decided: July 8, 1997

Before HAMILTON and MOTZ, Circuit Judges, and LEGG,
United States District Judge for the District of Maryland, sitting
by
designation.

_____

Reversed and remanded by published opinion. Judge Motz wrote the
opinion, in which Judge Hamilton and Judge Legg joined.

_____

**COUNSEL**

**ARGUED:** J. Farrest Taylor, CHERRY, GIVENS, PETERS,
LOCKETT & DIAZ, Dothan, Alabama, for Appellant. Michael Har-

per Gladstone, MAYS & VALENTINE, L.L.P., Richmond, Virginia, for Appellees. **ON BRIEF:** John K. Givens, CHERRY, GIVENS, PETERS, LOCKETT & DIAZ, Dothan, Alabama, for Appellant. Dabney J. Carr, IV, MAYS & VALENTINE, L.L.P., Richmond, Virginia, for Appellees.

_____

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

In this product liability diversity case, after the jury awarded the plaintiff substantial damages, the district court granted the defendant's motion for judgment. Because the district court erred in concluding that the hazard presented by defendant's product was open and obvious as a matter of law, and because sufficient evidence supported the jury verdict, we reverse and remand for further proceedings.

I.

Daniel Freeman purchased a Case International 1130 tractor with a mower attachment ("1130" or "mower" or "tractor") to care for his lawn. On May 22, 1992, the second time he used the 1130, Freeman suffered a serious accident.

While Freeman was mowing his lawn near a rocky slope, the mower blades glanced against a partially-buried boulder. Freeman lifted his foot off the speed ratio control pedal, bringing the tractor to a stop; he then pushed in the clutch and brake pedals and raised the mower attachment, intending to see if the rock had damaged the blades. Freeman had never used the brakes before because the mower is designed not to move unless the rider is pressing the speed ratio control pedal. Freeman removed his foot from the clutch to allow the blades to spin in order to check their alignment, planning then to back away from the boulder. Suddenly, the mower lunged forward, toward, and then over, the rocky embankment. Freeman leapt away from the machine, rolling forty feet down the hill. He came to rest on his stomach, safely, but the 1130 tumbled down on top of him, with the

2

mower blades still activated. The blades severely and permanently injured him.

Freeman initiated this action against Case asserting negligence and breach of implied warranties. Two asserted defects in the mower pro- vided the factual basis for both of these theories.

First, Freeman alleged that the brake pedal, which was located directly above the speed ratio control pedal, was too close to that pedal so that when a rider released the clutch and attempted to brake the mower, he risked pushing both pedals at the same time. Simulta- neous engagement caused the 1130 to lurch forward once the clutch was released because the brakes were unable to override the mower's forward propulsion.**1** Freeman maintained that this defect caused his accident.

Freeman also claimed that the 1130 was defective because it was not equipped with an operator presence control device, which would have discontinued power to the mower blades as soon as Freeman's weight left the tractor seat. If the mower had been designed with an operator presence control device, Freeman contended, the blades would have been moving much more slowly, if at all, by the time they hit him, and would not have injured him so badly.

A jury heard the case for seven days in October and November 1995 and awarded Freeman $3.8 million in compensatory damages. On a special verdict form the jury expressly found that Case negli- gently designed the 1130 in a manner that made it unreasonably dan- gerous, that the negligence proximately caused the accident, that Freeman was not contributorily negligent, and that he did not assume the risk of injury by voluntarily exposing himself to a known danger. The jury also found that Case breached its "implied warranty of mer- chantability and/or fitness for a particular use," that Freeman did not

---

**1** The mower is equipped with split brakes to allow for separate braking of the rear wheels. The brakes can be latched together for straight brak- ing and apparently were so latched at the time of the accident. Although there does not appear to be direct evidence on this point, no party has suggested to the contrary.

unforeseeably misuse the mower, and that the defects that made the 1130 unreasonably dangerous were not open and obvious.

Case moved for judgment as a matter of law and a new trial. On April 19, 1996, the court granted Case judgment as a matter of law because it found that the proximity of the pedals and the absence of the operator presence control device were open and obvious hazards. See Freeman v. Case Corp., 924 F. Supp. 1456, 1467-68 (W.D. Va. 1996). The court also concluded that although Freeman had presented sufficient evidence of an unreasonably dangerous defect in the lack of an operator presence control device, he failed to present sufficient evidence of an unreasonably dangerous defect in the pedal configura- tion. Id. at 1462-64. Additionally, the court held that Freeman had failed to establish a breach of the implied warranty of fitness for a particular purpose and entered a conditional order granting a new trial on that issue. Id. at 1464. Finally, the court preliminarily determined that the $3.8 million jury award was excessive. Id. at 1473-74.

Freeman appeals. Because our jurisdiction is based on diversity of citizenship -- a suit by a Virginia resident against a Delaware corpo- ration -- we must apply the law of the state where the accident occurred, Virginia. In doing so, we review de novo the district court's grant of judgment as a matter of law to determine whether the evi- dence presented at trial, viewed in the light most favorable to Free- man, would have allowed a reasonable jury to render a verdict in his favor. See Andrade v. Mayfair Management, Inc., 88 F.3d 258, 261 (4th Cir. 1996). We review the district court's conditional grant of a motion for new trial for abuse of discretion, see City of Richmond v. Madison Management Group, Inc., 918 F.2d 438, 458 (4th Cir. 1990), recognizing that an error of law constitutes an abuse of discretion. See United States v. Koon, 116 S. Ct. 2035, 2047 (1996); Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990).

II.

The district court held, as a matter of law, that the mower's asserted defects were open and obvious.**2** If that conclusion is correct,

---

**2** Case also asserted two other affirmative defenses at trial, which

it reasserts on appeal: unforeseeable misuse and contributory negligence.

4

it bars Freeman's recovery under either a contract or tort theory. This is so because in Virginia, a plaintiff cannot recover for a breach of an implied warranty or negligence if the "purported defect of which the plaintiff complains was `known, visible or obvious' to him." <u>Wood v. Bass Pro Shops, Inc.</u>, 462 S.E.2d 101 (Va. 1995) (citing <u>Brockett v. Harrell Bros.</u>, 143 S.E.2d 897, 902 (Va. 1965)) (applying open and obvious defense in warranty); <u>Harris-Teeter, Inc. v. Burroughs</u>, 399 S.E.2d 801 (Va. 1991) (applying open and obvious defense in negligence).

"A risk is open and obvious if the person using the product is or should be aware of the risk." <u>Austin v. Clark Equip. Co.</u>, 48 F.3d 833, 836 (4th Cir. 1995) (interpreting Virginia law). Whether a hazard is open and obvious is a question of fact, and should be left to the jury when "the evidence [is] in conflict." <u>Morgen Indus., Inc. v. Vaughan</u>, 471 S.E.2d 489, 492-93 (Va. 1996).

In granting judgment to Case, the district court determined that the arrangement of the brake and speed ratio control (SRC) pedals was open and obvious. While this may be true, it is not dispositive of the issue. The relevant question under Virginia law is not whether the defect itself -- here the pedal arrangement -- was obvious, but whether the hazard -- the risk of inadvertent coengagement causing the tractor to lurch after release of the clutch-- was open and obvious.**3**

_____
Both the jury and the district court rejected the unforeseeable use defense and, contrary to Case's assertion on appeal, that decision was clearly correct. Information contained in the 1130's promotional literature and owner's manual provides solid evidence that Case contemplated Freeman's actions, including lawn mowing on slopes, in designing and marketing the 1130. As to contributory negligence, although the jury found Freeman was not contributorily negligent, the district court granted Case judgment as a matter of law on this point. In view of our holding here, we need not evaluate the merits of that determination because even if the

district court were correct, contributory negligence could not bar Free-
man's warranty claim. <u>See Brockett v. Harrell Bros.</u>, 143 S.E.2d 897,
902 (Va. 1965) (holding that contributory negligence is not a defense to
a breach of warranty claim).

**3** Because we conclude that the hazard of inadvertent coengagement of
the two pedals leading to unexpected lurching was not open and obvious,
we need not reach the question of whether the absence of an operator
presence control device also presented an open and obvious hazard.

5

For example, in Morgen, 471 S.E.2d at 491, the asserted defect was an unguarded "nip point." The nip point is simply the point on a rail where the rail meets a wheel rolling on it, a design feature clearly visible to an observer. The plaintiff's expert testified nevertheless "that `nip points' are not dangers that are obvious to most people." Id. (emphasis added). Despite testimony to the contrary, the Virginia Supreme Court found that "the jury was entitled to accept [the expert's] testimony that the hazard was not open and obvious." Morgen, 471 S.E.2d at 492. Thus, Virginia law looks not to whether the defect itself was obvious, but whether the hazard was clearly apparent.

Here, the hazard -- that the pedals could easily be inadvertently coengaged and that coengagement could cause the mower to lurch because the brakes would not override the SRC -- is far from obvious. Indeed, an operator might well not realize that the mower's pedals were coengaged unless he looked down at his feet. Unlike the accelerator pedal in an automobile, the SRC operates on hydrostatic principles; pressing the SRC does not affect engine speed so the operator would not perceive a change in engine noise due to faster engine rotation were the SRC inadvertently engaged.

Moreover, Case's expert testified that the brakes should overpower the SRC if an operator simultaneously pushes both pedals. This testimony alone would prevent a conclusion as a matter of law that the hazard caused by the brake's failure to override the SRC was "obvious." Case itself said such a hazard did not exist. Finally, the jury examined Freeman's mower in detail -- two jurors actually sat in the operator's position, observed the pedals from that perspective, and pushed them -- before the jury concluded that the defect was not open and obvious.[4]

_____

[4] Case argues on appeal that a new trial is necessary merely because some jurors sat on the tractor. See United States v. Beach, 296 F.2d 153 (4th Cir. 1961). The district court rejected this argument, as do we. The jurors' inspection of the tractor merely constituted "a more critical examination of an exhibit." Id. at 159 (citation omitted). Such an examination is permissible. Id.

Viewing the evidence in the light most favorable to Freeman, as we must, the jury could reasonably have determined that the hazard presented by the pedals' proximity combined with the strength of the brakes relative to the SRC was not open and obvious. Case was not entitled to judgment as a matter of law on this basis.

III.

Our conclusion that the district court erred in finding the alleged hazards "open and obvious" as a matter of law does not automatically require reinstatement of the jury verdict. This is so because the district court alternatively held that Freeman failed to present sufficient evidence that the pedal configuration and attendant hazard constituted an unreasonably dangerous design defect under Virginia law and so Case might be entitled to judgment on this ground.[5] We believe, however, that Freeman presented sufficient evidence from which a jury could conclude that the pedal configuration and associated risk of sudden forward movement made the 1130 unreasonably dangerous.

To establish this defect, Freeman presented testimony by Smith Reed, an expert in mechanical engineering, who belonged to a number of engineering societies and had successfully completed the examinations necessary to become a registered professional engineer. Reed had previously testified as an expert in mechanical engineering in federal court in the Eastern District of Virginia-- most recently

_____

[5] The district court also indicated that were this court to find the open and obvious affirmative defenses inapplicable, but that the evidence as to the hazard presented by the pedal configuration was insufficient, it would consider granting a new trial. The court believed that in that case a new trial might be warranted because the evidentiary insufficiency might have been due to its own decision to exclude all evidence regarding competing products, which it feared might have been erroneous. See Alevromagiros v. Hechinger Co., 993 F.2d 417, 420-21 (4th Cir. 1993) (finding that "actual industry practices," in the aggregate, could indicate consumer expectations, one way to prove unreasonably dangerous

design) (citing <u>Sexton v. Bell Helmets, Inc.</u>, 926 F.2d 331, 337 (4th Cir.
1991)). The district court never granted a conditional new trial on this
issue and, of course, since we hold that Freeman has presented sufficient
evidence to the jury to sustain its verdict, a new trial to allow Freeman
to present additional evidence would obviously be unnecessary.

just a week before trial. Reed also had spent several years working for
one of Case's competitors designing mowers and tractors. Case did
not object to Reed's engineering qualifications or expertise in the
field of mechanical engineering. Nor did Case maintain that Reed's
testimony was not relevant. But Case did assert that Reed's testimony
was legally insufficient.

The district court rejected Case's argument and permitted Reed to
testify before the jury.**6** Post-trial, however, the court concluded that
although it was a "difficult question," Reed's testimony was insuffi-
cient to support the jury's finding. <u>Freeman</u>, 924 F. Supp. at 1463. In
reaching this conclusion, the court relied heavily on our decision in
<u>Alevromagiros v. Hechinger</u>, 993 F.2d at 417, 421 (4th Cir. 1993).
There, we refused to credit an expert witness who "testified to no cus-
toms of the trade, referred to no literature in the field, and did not
identify the reasonable expectations of customers," but merely gave
"his own subjective opinion." <u>Id. Alevromagiros</u>, however, does not

_____

**6** The district court refused to hold Reed's testimony inadmissible under
<u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579 (1993), reasoning
that <u>Daubert</u> only applied to scientific testimony and not technical testi-
mony, like Reed's. We need not here decide the question that the
Supreme Court left open, <u>i.e.</u> whether the <u>Daubert</u> analysis applies out-
side the scientific context, because Case misunderstands the <u>Daubert</u> test
in attempting to apply it here. <u>Daubert</u> instructs district courts to make
a "preliminary assessment of whether the reasoning or methodology"
underlying expert testimony "is scientifically valid." <u>Id.</u> at 590 n.8,
592-93. Essentially, Case does not challenge Reed's "reasoning or meth-
odology" but his ultimate conclusion, that the 1130 is unreasonably dan-
gerous. In cases like this one, where an expert relies on his experience
and training and not a particular methodology to reach his conclusions,
"application of the <u>Daubert</u> [analysis] is unwarranted." <u>Compton v. Sub-
uru of America, Inc.</u>, 82 F.3d 1513, 1518 (10th Cir.), <u>cert. denied</u>,

117
S. Ct. 611 (1996); see also <u>United States v. Jones</u>, 107 F.3d 1147, 1158
(6th Cir. 1997) (holding <u>Daubert</u> inapplicable to testimony based on experience or training); <u>United States v. 14.38 Acres of Land, More or Less Situated in LeFlore County</u>, 80 F.3d 1074, 1078-79 (5th Cir. 1996)
(same); <u>Iacobelli Constr., Inc. v. County of Monroe</u>, 32 F.3d 19, 25 (2d
Cir. 1994) (same). Thus, we affirm the district court's rejection of the
<u>Daubert</u> challenge to Reed's testimony, albeit on somewhat different grounds.

compel the conclusion that Reed's testimony was insufficient in this
case.

Unlike the expert in <u>Alevromagiros</u>, Reed did not simply opine on
the basis of his "own subjective opinion." Rather, he applied his expe-
rience and training in tractor design in reviewing numerous published
materials, including papers by the Society of Agricultural Engineers,
extensive industry literature, various tractor specifications, and trade
journals before reaching his conclusions. Reed also inspected Free-
man's 1130 and performed various tests on it, which indicated that the
tractor did indeed lurch when both the SRC and brake pedals were
pressed and the clutch released.**7** In view of the published authorities,
his inspection of the 1130, and his "sound engineering judgment,"
Reed opined that the 1130's pedal design was unreasonably danger-
ous. Although Reed could not cite any published source that analyzed
the 1130's specific configuration and found it defective, Reed clearly
applied his expertise and knowledge of the published sources and
drew from his detailed inspection of the product itself in evaluating
the configuration at issue here. Significantly, he identified specific
published materials that had directly guided his analysis. Virginia law
is clear that an expert opinion need not find direct support in pub-
lished sources; some analogies will have to be drawn. <u>See Ford Motor</u>

_____

**7** Case protests that Reed's testing of the 1130 was inadmissible
because the testing conditions were not sufficiently similar to those at the
time of the accident, since the tractor was no longer in its original condi-
tion. However, the district court acted within its discretion in admitting
this testimony. Such tests are only inadmissible when testing conditions
are "so dissimilar to the conditions existing at the time of the accident
`. . . in such fundamental and important respects that the risk of prejudice
to . . . [the defendant] outweigh[s] the probative value of the
evidence.'"
<u>Chase v. General Motors Corp.</u>, 856 F.2d 17, 20 (4th Cir. 1988)

(citing
Gladhill v. General Motors Corp., 743 F.2d 1049, 1052 (4th Cir.
1984)).
Here, a Case employee acknowledged that the only significant change
in
the condition of the tractor after the accident was that its
battery had
died.

In addition, Case inaccurately claims that neither Freeman nor Reed
"made any reference to simultaneous clutch use as a defect in the
trac-
tor." In fact, both Freeman and Reed testified at length regarding
the
relationship between clutch use and the accident. See J.A. 227-29,
264,
346-61, 667-70, 677.

9

Co. v. Bartholomew, 297 S.E.2d 675, 679 (Va. 1982) (finding that when "safety standards . . . had never been promulgated, . . . it was a matter of opinion of trained experts what design was safe for its intended use").

Case thoroughly cross-examined Reed and at that time highlighted what it perceived to be deficiencies in his analysis. Case also introduced the testimony of its own expert, who asserted a contrary theory. Case does not challenge the court's instructions to the jury as to burden of proof or as to how the jury was to assess the expert testimony. Thus, the court afforded Case the "appropriate means" for discrediting the expert testimony it found suspect. See Daubert, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

Reed's testimony regarding the pedal arrangement, particularly when combined with the jury's opportunity to inspect the tractor itself and judge the likelihood (or not) of inadvertent coengagement, was sufficient to sustain the jury's verdict that the pedal design and associated risk of lurching was unreasonably dangerous.

IV.

The district court believed that a new trial would be required, even if it erred in its ruling on the obviousness of the design defect, because of the imprecise phrasing of the warranty question on the special verdict form.

The special verdict form asked the jurors to determine whether "the defendant breached an implied warranty of merchantability and/or fitness for a particular purpose;" the jurors answered yes. But after trial the district court concluded as a matter of law that there had been no proof of breach of the warranty of fitness for a particular purpose because Freeman presented no evidence that he relied on Case in selecting a product particularly suited for his needs. See generally Medcom, Inc. v. C. Arthur Weaver Co., 348 S.E.2d 243, 246 (Va. 1986) (discussing elements of breach of implied warranty of fitness for a particular purpose). For this reason, the court believed a

retrial
would be necessary to determine whether Case breached the warranty

10

of merchantability because the jury could have answered the special verdict question in the affirmative without having found a breach of that warranty.

In the case at hand, however, it would not have been possible for the jury to find a breach of the warranty of fitness for a particular purpose without also finding a breach of the warranty of merchantability. When, as here, the buyer's particular purpose is the same as the intended purpose of the product (lawn mowing), the two warranties are identical, except that to prove breach of the warranty of fitness for a particular purpose, the buyer must additionally prove that he informed the seller of his purpose and relied on the seller's judgment in selecting a product appropriate for that purpose. See Walter H.E. Jaeger, Warranties of Merchantability and Fitness for Use: Recent Developments, 16 Rutgers L. Rev. 493, 506-07 (1962), cited with approval in Featherall v. Firestone Tire & Rubber Co., 252 S.E.2d 358, 367 (Va. 1979). These additional elements are the ones Freeman failed to prove.

Therefore, all of the elements of a breach of the warranty of merchantability would have been established by a jury finding of a breach of the warranty of fitness for a particular purpose. The jury could not have found a breach of the warranty of fitness for a particular purpose without also finding a breach of the warranty of merchantability. For this reason, the district court's conditional grant of new trial on the breach of warranty issue constituted a clear error of law and, therefore, an abuse of its discretion. See Koon, 116 S. Ct. at 2035; Cooter & Gell, 496 U.S. at 405.

V.

Finally, the district court made a preliminary determination that the jury's award of $3.8 million was "excessive." Freeman, 924 F. Supp. at 1473-74. In view of its grant of judgment to Case, the court did not explain its rationale nor did it make a final decision on the matter. Accordingly, we have no way of assessing this holding. However, we are confident that on remand the district court will carefully

consider
this question and will, as it indicated it would if the occasion pres-
ented itself, "further elaborate on its decision that the verdict is exces-

11

sive." <u>Id.</u> at 1474. We reverse and remand for further proceedings consistent with this opinion.

<u>REVERSED AND REMANDED</u>

12