UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

KIMBERLY CERTA, D.D.S.,
      *Plaintiff-Appellant,*

v.

MONROE E. HARRIS, JR., D.M.D.;
MICHAEL J. LINK, D.D.S.; GARY E.
TAYLOR, D.D.S.; NORA M. FRENCH,
D.D.S.; DARRYL LEFCOE, D.D.S.;
TRUDY LEVITIN, R.D.H.; GOPAL S.
PAL, D.D.S.; DEBORAH SOUTHALL,
R.D.H.; RICHARD D. WILSON,
D.D.S.; ROBERT WINTERS, Esq.;
JAMES S. GILMORE, III, Office of the
Governor,
      *Defendants-Appellees.*

No. 01-1132

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CA-00-1948-A)

Argued: September 28, 2001

Decided: October 26, 2001

Before LUTTIG, TRAXLER, and KING, Circuit Judges.

---

Vacated and remanded by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Robert J. Zelnick, SZABO, ZELNICK & ERICKSON,
P.C., Woodbridge, Virginia, for Appellant. Howard Martin Casway,

Assistant Attorney General, OFFICE OF THE ATTORNEY GEN-
ERAL, Richmond, Virginia, for Appellees. **ON BRIEF:** Victor M.
Glasberg, VICTOR M. GLASBERG & ASSOCIATES, Alexandria,
Virginia, for Appellant. Mark L. Earley, Attorney General, Ashley L.
Taylor, Jr., Deputy Attorney General, Jane D. Hickey, Senior Assis-
tant Attorney General, OFFICE OF THE ATTORNEY GENERAL,
Richmond, Virginia, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Kimberly Certa, a Virginia dentist, brought suit in the Eastern Dis-
trict of Virginia challenging the constitutionality of a Virginia statute
prohibiting dentists from practicing under a trade name. The district
court abstained from exercising jurisdiction over Certa's claim, apply-
ing the doctrine of *Younger v. Harris*, 401 U.S. 37 (1971), which,
absent extraordinary circumstances, precludes federal courts from
interfering with ongoing state judicial proceedings. As explained
below, we are unable to identify any such proceeding, and we accord-
ingly vacate and remand.

I.

Virginia Code § 54.1-2718 provides that "[n]o person shall prac-
tice, offer to practice, or hold himself out as practicing dentistry,
under a name other than his own" (the "Statute"). Certa and another
dentist, Daniel F. Babiec, each maintained separate practices under
trade names. By order of November 27, 1997, the Virginia Board of
Dentistry (the "Board"), ordered Babiec to cease and desist the use of
his trade names.[1] At the same time, the Board was conducting an

---

[1]Babiec failed to comply with the cease and desist order, and after a
second formal hearing, was indefinitely suspended from the practice of
dentistry by order dated October 4, 1999.

investigation of Certa for violating the Statute. Babiec appealed the Board's cease and desist order by filing a proceeding in the Circuit Court of Fairfax County, while Certa scheduled an informal conference with the Board regarding her use of the trade name "Softouch Dental Care." In August of 1999, Babiec and Certa filed suit in the Eastern District of Virginia, alleging that the Statute infringed their First Amendment rights (the "Babiec suit"). By Memorandum Opinion of October 27, 1999, the district court dismissed the Babiec suit under *Younger v. Harris*, concluding that it would improperly interfere with ongoing state judicial proceedings. *Babiec v. Moore*, Memorandum Opinion, Civ. No. 99-1294-A (E.D. Va. Oct. 27, 1999). Babiec and Certa thereafter appealed that decision to this Court, but their appeal was dismissed as part of a settlement agreement.

Meanwhile, Babiec's state court appeal proceeded, culminating in a March 20, 2000, decision of the circuit court. In that ruling, the court declared the Statute unconstitutional as applied to Babiec (the "March 20 Opinion"). It concluded that Babiec's trade names ("Bradlee Dental Care" and "Hayfield Dental Care") described the location of those offices and thereby contained an important informational component. Applying the four-part test of *Central Hudson Gas v. Public Service Commission*, 447 U.S. 557 (1980), the circuit court also determined that Babiec's trade names (1) were not misleading or deceptive, and that the Commonwealth neither (2) demonstrated an important governmental interest justifying the regulation, nor (3) demonstrated that the Statute advanced such a governmental interest, and (4) even if Virginia possessed such an interest, the Statute was an overbroad "blunderbuss approach." J.A. at 37.

On March 23, 2000, three days after the circuit court's March 20 Opinion, the Board wrote to Certa, ordering her to cease and desist from using her trade name "Softouch Dental Care" (the "March 23 Order"). Soon thereafter, on April 13, 2000, the Board, Babiec, and Certa agreed to settle their disputes on three conditions: (1) Babiec and Certa would withdraw their appeal to this Court of the dismissal of the Babiec suit; (2) the Board would not appeal the circuit court's March 20 Opinion; and (3) the Board would vacate the March 23 Order, subject to "the understanding that the Board may reinstitute new administrative proceedings, consistent with [the March 20 Opinion], if it determines that [Certa's] use of "Softouch Dental Care" is

either false, misleading or deceptive or constitutes a claim of superiority." J.A. 74. In order to preserve her rights in the event the settlement agreement was not finalized, Certa, on April 17, 2000, requested a formal hearing before the Board regarding the March 23 Order.

As a result of the March 20 Opinion, the Board, in the summer of 2000, adopted a new interpretive guideline under which "no dentist may practice dentistry under a name other than his own if such name is either false, misleading or deceptive or where such name is promotional and/or conveys no relevant information to consumers regarding either the geographic location or type of dentistry practiced therein." J.A. 41. The Board then wrote Certa another letter, dated September 28, 2000, informing her that her use of the term "Softouch" was inconsistent with both Virginia law and the Board's regulations, and requesting her compliance therewith. As a result, Certa, on November 22, 2000, filed this lawsuit in the Eastern District of Virginia, challenging the constitutionality of the Statute on First Amendment and equal protection grounds. On January 12, 2001, the district court granted the Board's motion to dismiss, finding *Younger* abstention to be appropriate because there were "ongoing administrative proceedings in the state of Virginia."[2] J.A. 80. This appeal followed, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

II.

The legal principles governing abstention are clear and settled, and "begin with the fundamental proposition that 'abstention from the

---

[2]The district court reference to "ongoing administrative proceedings" requires a brief explanation of *Younger*'s reach. At its inception, *Younger* abstention applied only to "pending state court proceedings" that were criminal in nature. *Younger*, 401 U.S. at 41. Over time, the Court expanded this definition to encompass all "ongoing state judicial proceedings." *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 237 (1984), including administrative proceedings that are "judicial in nature." *Ohio Civil Rights Comm'n v. Dayton Christian Schs.*, 477 U.S. 619, 627 (1986); *Middlesex County Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 433-34 (1982). Our use in this opinion of the term "ongoing state judicial proceedings" encompasses any administrative proceeding within the scope of the *Younger* doctrine.

exercise of federal jurisdiction is the exception, not the rule.'" *Richmond, Fredericksburg & Potomac RR Co. v. Forst*, 4 F.3d 244, 251 (4th Cir. 1993) (quoting *Colorado River Water Consv. Dist. v. United States*, 424 U.S. 800, 813 (1976)). We recognize that "[t]he obligation to hear cases properly before the district court is 'virtually unflagging.' Abstention may be justified only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Forst*, 4 F.3d at 251 (internal citations and quotations omitted). In the final analysis, however, a district court's decision to abstain is reviewed by us for an abuse of discretion. *Martin Marietta Corp. v. Maryland Comm'n on Human Rel.*, 38 F.3d 1392, 1396 (4th Cir. 1994); *see also Freeman v. Case Corp.*, 118 F.3d 1011, 1014 (4th Cir. 1997) (recognizing that an error of law constitutes an abuse of discretion).

### III.

### A.

Although abstention comes in several varieties, the parties have raised, and we address, only the type known as *Younger* abstention. *Younger v. Harris*, 401 U.S. 37 (1971).[3] The *Younger* rule preserves

---

[3]There are at least four separate abstention doctrines. First, *Younger* abstention precludes federal courts from interfering with ongoing state judicial proceedings unless there are extraordinary circumstances, because state courts are fully competent to decide issues of federal law. *Younger v. Harris*, 401 U.S. 37 (1971). Second, under what is known as *Pullman* abstention, federal courts are not to decide unsettled questions of state law raising a constitutional question, where the state court may construe the statute in a manner avoiding the constitutional issue. *RR Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941). Third, under *Burford* abstention, a federal court sitting in equity may not interfere with complex state administrative procedures "(1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *New Orleans Pub. Serv. v. Council of New Orleans*, 491 U.S. 350, 361 (1991)

comity between the national government and the various states by foreclosing federal court proceedings when the federal claims "have been or could be presented in ongoing state judicial proceedings that concern important state interests." *Cinema Blue of Charlotte v. Gilchrist*, 887 F.2d 49, 52 (4th Cir. 1989) (citing *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 237-38 (1984)). As such, the exercise of *Younger* abstention is appropriate only where three conditions are met: "(1) there is an ongoing state judicial proceeding, (2) the proceeding implicates important state interests, and (3) there is an adequate opportunity to present the federal claims in the state proceeding." *Employers Res. Mgmt. Co. v. Am. Employers Benefit* Trust, 65 F.3d 1126, 1134 (4th Cir. 1995) (citing *Middlesex County Ethics Comm'n. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)). We have heretofore observed that "[a]bstention will not be required unless the state court proceedings have been initiated before any proceedings of substance on the merits have taken place in the federal court." *Employers Res. Mgmt*, 65 F.3d at 1135 (quoting *Midkiff*, 467 U.S. at 238). Thus, where the only issue addressed in the federal court is abstention, the federal suit has not proceeded to the point that it can overcome a *Younger* challenge. *See Hicks v. Miranda*, 422 U.S. 332, 349 (1975).

As we have pointed out, *see* note 2, *supra*, the reach of *Younger* abstention extends to ongoing state administrative proceedings implicating an important state interest, but only if the administrative proceedings are judicial in nature. *See, e.g.*, *Ohio Civil Rights Comm'n v. Dayton Christian Schs.*, 477 U.S. 619, 627 (1986). In this regard, we recognize that "[a]dministrative proceedings are not judicial in nature . . . if state law expressly indicates that the proceeding is not a judicial proceeding or part of one, or if the proceeding lacks trial-like trappings." *Telco Communications v. Carbaugh*, 885 F.2d 1225, 1228 (4th Cir. 1989) (internal citation omitted). Importantly, we observed in *Telco Communications* that the Virginia Administrative

---

(quoting *Colorado River Water Consv. Dist. v. United States*, 424 U.S. 800, 814 (1976)) (referring to *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943)). Finally, *Colorado River* abstention conserves judicial resources and avoids duplicative litigation when suits on the same claims exist in both the state and federal systems. *Colorado River*, 424 U.S. at 817.

Process Act distinguishes formal from informal proceedings. *Id.*; Va. Code § 9-6.14:1 et seq. And in Virginia, only formal administrative proceedings provide the "trial-like trappings" necessary to pass muster under *Younger. Telco Communications*, 885 F.2d at 1228.

In our *Telco Communications* decision, we addressed a constitutional challenge to Virginia charitable solicitation statutes that required disclosures of, inter alia, financial statements to potential donors. When Telco Communications filed its suit, the only administrative proceeding in being had been initiated by a letter from the agency, the Virginia Office of Consumer Affairs, to Telco Communications's attorneys "specifying violations of state law and inviting them to attend a fact-finding conference." *Id.* at 1228. That informal conference was held, albeit unsuccessfully, and the consumer affairs agency proceeded with its investigation. Before formal proceedings were instituted, however, Telco Communications brought suit against the Commissioner of consumer affairs in federal court. In our decision affirming the district court's refusal to abstain, we observed that "[a]ppellant's contention — that abstention is required whenever enforcement is threatened — would leave a party's constitutional rights in limbo while an agency contemplates enforcement but does not undertake it." *Id.* at 1229.

B.

Turning now to Certa's predicament, the Board maintains on appeal that, as of November 22, 2000, when Certa's complaint was filed, its administrative proceedings were merely "stayed." On the other hand, Certa contends that the proceedings had been "vacated." It is clear, however, that Certa, on July 26, 1999, had requested an informal conference with the Board, and that the conference had been continued three times at her request. By letter to the Board of March 14, 2000, she expressly waived her right to the informal conference, and also stated that she would not attend the scheduled meeting on March 17, 2000. Despite her absence, the Board met on March 17 to receive evidence regarding Certa's potential violation of the Statute, and it thereafter issued its March 23 Order.

The March 23 Order provided that (1) it would become final within 33 days, unless (2) Certa filed a written request for a formal hearing.

Accordingly, there were two potential responses to the March 23 Order: either Certa would request a formal hearing or she would not. If she failed to request a hearing and failed to comply with the March 23 Order, it contemplated that "within 90 days from the date this Order becomes final, further administrative proceedings shall be convened." J.A. 54. On the other hand, if Certa requested a formal hearing, "[u]pon receiving timely request for a hearing, the Board or panel thereof shall then proceed with a [formal] hearing." J.A. 54.

Due to the uncertainty of the pending settlement, Certa, on April 17, 2000, filed a written request with the Board for a formal hearing. For over a year, however, no such hearing was scheduled, and none has been held.[4] On September 28, 2000, the Board wrote Certa another letter, evaluating her use of the "Softouch" name under the new guideline promulgated in the summer of 2000, and finding that Certa's trade name was out of compliance because it "may be construed as promotional." J.A. 11. This letter requested that Certa "notify the Board of your compliance, so that the matter can be resolved." *Id.* It did not, however, reference the March 23 Order in any way, and it did not indicate that Certa was involved in a continuing violation of any kind.

We perceive this series of events as being entirely consistent with the settlement agreement of April 13, 2000. In the settlement, the parties agreed, inter alia, that the March 23 Order would be vacated, "with the express understanding that the Board may reinstitute new administrative proceedings . . . if it determines that her use of Softouch Dental Care is either false, misleading or deceptive or constitutes a claim of superiority." J.A. 74.

Clearly, both the Board and Certa viewed the March 23 Order as inapplicable after settlement of the Babiec suit. The September 28, 2000, letter to Certa initiated a new round of discussions under the

---

[4]The Board apparently issued Certa a notice for formal administrative hearing on April 27, 2001, while this appeal was pending. In response to a query at oral argument regarding this potential proceeding, counsel for the Board advised that the notice was "not germane." We therefore consider this case as though no formal hearing resulted from the March 23 Order.

Board's new legal standard. Importantly, that letter did not purport to initiate a formal administrative proceeding. And it is clear that, as of November 22, 2000, when this suit was initiated, no state judicial proceeding or administrative proceeding with formal trappings, as per *Telco Communications*, was in being.[5] Under these circumstances, we must conclude that the district court misapplied *Telco* and erred in deciding that exercise of its jurisdiction would interfere with some ongoing state judicial proceeding.[6]

## IV.

Because no ongoing state judicial proceeding exists, abstention under *Younger* is inappropriate. We therefore vacate the dismissal and remand for further proceedings.

*VACATED AND REMANDED*

---

[5]Even if the earlier proceeding is construed as being stayed by the settlement, the last action before November 22, 2000 was Certa's request for a formal hearing in April 2000. The Board had taken no further steps in the intervening seven months to progress that "stayed" proceeding to some formal stage that might satisfy the "judicial in nature" requirements of *Younger* and *Telco*.

[6]The Board would have us characterize Certa's request for a formal hearing as instituting the "judicial" proceeding required for *Younger* abstention. We are, however, unable to do so. The Board failed to act on Certa's request for a formal hearing for more than a year, and under the Board's theory, this delay precluded Certa from bringing her claim in federal court. At the same time, however, Certa could not sue in state court because she had not exhausted her state administrative remedies. *See* Va. Code § 9-6.14:16(A); *Faquier County Dep't of Soc. Servs. v. Robinson*, 455 S.E.2d 734, 739 (Va. Ct. App. 1995). This circumstance "place[d] the hapless plaintiff between the Scylla of intentionally flouting state law and the Charybdis of forgoing what [s]he believe[d] to be constitutionally protected activity." *Steffel v. Thompson*, 415 U.S. 452, 462 (1974). Interpreting Certa's request of April 17, 2000 for formal proceedings as the beginning of a state "judicial" proceeding warranting *Younger* abstention would leave Certa's "constitutional rights in limbo while an agency contemplates enforcement but does not undertake it." *Telco Communications*, 885 F.2d at 1229.